STATE OF NORTH CAROLINA v. JAMES PALMER, ALIAS JAMES BURRELL

No. 6

(Filed 15 December 1977)

1. **Indictment and Warrant § 9.4— indictment in statutory language**

An indictment couched in the language of .the statute is generally suffi-cient to charge the statutory offense.

2. **Indictment and Warrant § 9— allegation of ultimate facts**

Indictments and warrants generally need only allege the ultimate facts constituting each element of the criminal offense and need not allege eviden-tiary facts.

3. **Assault and Battery § 11.1; Indictment and Warrant § 9.2— deadly weapon—sufficiency of allegation**

It is sufficient for indictments or warrants seeking to charge a crime in which one of the elements is the use of a deadly weapon (1) to name the weapon and (2) either to state expressly that the weapon used was a "deadly weapon" or to allege such facts as would *necessarily* demonstrate the deadly character of the weapon.

4. **Assault and Battery § 11.1— assault with "stick, a deadly weapon"— sufficien-cy of indictment**

An indictment charging an assault with "a stick, a deadly weapon" without further description of the size, weight or other properties showing the deadly character of the stick is sufficient to support a verdict of guilty of assault with a deadly weapon. The decision of *State v. Porter*, 101 N.C. 713 (1888) is overruled.

5. **Assault and Battery § 16— aggravated assault—stick not deadly weapon per se—failure to submit simple assault**

In this prosecution for assault with a deadly weapon—a stick— with intent to kill inflicting serious injury, the trial court committed prejudicial error in failing to submit to the jury the issue of simple assault as a possible verdict where the stick used by defendant was not, under the evidence in the case, a deadly weapon as a matter of law; and where the jury determined other elements of aggravation in defendant's favor and defendant could only have been convicted of simple assault if the jury had not determined that the stick was a deadly weapon.

Chief Justice SHARP dissenting.

ON the state's petition for discretionary review of the decision of the Court of Appeals, 32 N.C. App. 166, 231 S.E. 2d 29 (1977), arresting the judgment entered by *McLelland, J.*, at the 10 May 1976 Criminal Session of PERSON County Superior Court.

*Rufus L. Edmisten, Attorney General, by Isham B. Hudson, Jr., Assistant Attorney General, for the state.*

*James W. Tolin, Jr., attorney for defendant.*

EXUM, Justice.

Defendant was tried on an indictment charging assault with a deadly weapon with intent to kill inflicting serious injury.[1] The jury returned a verdict of guilty of assault with a deadly weapon.[2] Defendant was sentenced to two years imprisonment.

This case presents two questions for decision. The first is whether the Court of Appeals erred in holding the indictment insufficient to support the verdict and judgment because it charged an assault with "a stick, a deadly weapon" without further description of the size, weight or other properties showing the deadly character of the stick. The second is whether the trial judge committed prejudicial error in failing to submit simple assault as a possible verdict. We answer both questions in the affirmative. The decision of the Court of Appeals is consequently reversed and the case remanded for a new trial.

I

Defendant was tried on an indictment worded as follows:

"THE JURORS FOR THE STATE UPON THEIR OATH PRESENT that on or about the 13th day of June, 1975, in Person County James Palmer, alias James Burrell unlawfully and wilfully did feloniously assault Grover A. Whitfield, Sr., with a stick, a deadly weapon, by beating him about the body and head. The assault was intended to kill and resulted in serious bodily injury, in that some teeth were knocked out and face was beat very badly."

---

1. A felony punishable by a fine, imprisonment for not more than twenty years, or both. G.S. 14-32(a).

2. A misdemeanor punishable by a fine, imprisonment for not more than two years, or both. G.S. 14-33(b)(1).

The "stick" mentioned in the bill of indictment was examined by the Court of Appeals and by this Court. It is a hard wooden club weighing two pounds and eleven ounces, approximately 43¼ inches long, two inches in diameter at the club end, and one and one-half inches in diameter at the handle. Conceding that the "stick" "could have been described in the bill of indictment sufficiently to show its character as a deadly weapon," the Court of Appeals nevertheless held that since it was not so described, the bill failed to charge an assault with a deadly weapon. Therefore the Court of Appeals arrested the judgment entered against defendant in the superior court.

The Court of Appeals relied principally on *State v. Porter*, 101 N.C. 713, 7 S.E. 902 (1888). In that case the indictment charged that the defendant "did unlawfully and wilfully assault, beat and wound one Candace Porter with a deadly weapon, to wit, a certain stick . . . ." The Court held the indictment insufficient to charge an aggravated assault. It said, 101 N.C. at 716, 7 S.E. at 903-04:

> "The present indictment manifestly falls short of this requirement, for while called a deadly weapon it is designated simply as a stick, with no description of its size, weight or other qualities or properties from which it can be seen to be a deadly or dangerous implement, calculated in its use to put in peril life or inflict great physical injury upon the assailed."

We now think the decision in *Porter* should no longer be considered authoritative, and the decision is consequently overruled.

It is apparent that the Court in *Porter* was primarily concerned with whether the indictment on its face was sufficient to vest original jurisdiction in the superior court.[3] The rule in *Porter* seems to have been one of convenience in that by requiring a detailed statement in the bill regarding the nature of the weapon the trial court could, *in limine*, determine whether it had jurisdiction to proceed. The same concern appears in the analogous case

---

3. Apparently at the time *Porter* was decided justices of the peace had exclusive jurisdiction of assaults for a period of six months after their commission unless the assault was aggravated, *i.e.*, done with intent to kill, to commit rape, with deadly weapon, or inflicting serious injury. *See* the opinion in Porter; *State v. Battle*, cited in text; and *State v. Phillips*, 104 N.C. 786, 10 S.E. 463 (1889). The Court in *Porter* said, "[T]he court must be able, from an inspection of the charge, in the terms in which it is made in the indictment, to see that its jurisdiction attaches, that the weapon with which the assault was made was a deadly instrument, not merely by calling it 'deadly,' unless by so describing it by name, or with such attending circumstances as show its character as such, and when so described the jurisdiction becomes apparent and will be exercised." 101 N.C. at 716, 7 S.E. at 903.

of *State v. Battle*, 130 N.C. 655, 41 S.E. 66 (1902), where the Court held that a bill of indictment which alleged that the defendant had committed an assault inflicting "serious injury" was insufficient to charge an aggravated assault because it did not describe in detail precisely what injury was inflicted.

The soundness of the holding in *Battle* was questioned in *State v. Gregory*, 223 N.C. 415, 27 S.E. 2d 140 (1943). In *Gregory* defendant was indicted for the statutory crime of assault with a deadly weapon with intent to kill inflicting serious injury.[4] Recognizing that the rule in *Battle* might have "afforded a convenient method by which the Court might *in limine* determine its jurisdiction without entering upon a fruitless investigation," the Court in *Gregory* nevertheless concluded, 223 N.C. at 419-20, 27 S.E. 2d at 143:

"We think, however, the requirement that the nature and extent of the injury should be more specifically described was as much due to the more meticulous standards of the common law, under which the concepts and definitions of offenses took form largely through the experience of administration and without the aid of definitive statutes; and, as a means of 'playing safe,' indictments were viewed with great, and often unnecessary, strictness. Now, under a motion for arrest of judgment for a defect in the indictment, it must be liberally construed. 15 Am. Jur., Criminal Law, s. 435, and cited cases.

"The purpose of an indictment is at least twofold: First, to make clear the offense charged so that the investigation may be confined to that offense, that proper procedure may be followed, and applicable law invoked; second, to put the defendant on reasonable notice so as to enable him to make his defense. When these purposes are served, the functions of the indictment are not so impaired by the omission of subordinate details—in this case a more particular description of the injury—as to necessitate an abruption of the judicial investigation in which, if it is allowed to proceed, the questioned condition may be made clear and the rights of the accused protected by the application of legal standards."

4. The statute enacted as Chapter 101, Public Laws of 1919, first codified as C.S. 4214 (the precursor of what is now G.S. 14-32(a)), provided: "Any person who assaults another with a deadly weapon with intent to kill, and inflicts serious injury not resulting in death, shall be guilty of a felony and shall be punished by imprisonment . . . for a period not less than four months nor more than 10 years."

Although the Court in *Gregory* took pains to avoid expressly overruling *Battle* and attempted to distinguish it on the ground that it dealt with a common law offense while *Gregory* involved a statutory crime,[5] it cast serious doubt on the soundness of the rule in *Battle* even as applied to common law offenses.

The *Porter* rule was seriously eroded by *State v. Randolph,* 228 N.C. 228, 45 S.E. 2d 132 (1947), a prosecution under General Statute 14-32 in which the indictment described the weapon as "a deadly weapon, to wit, a certain knife." Without mentioning *Porter,* this Court held the allegation concerning the deadly weapon to be sufficient without further description of the weapon.

The Court, however, relied in part on *Porter* in *State v. Wiggs,* 269 N.C. 507, 153 S.E. 2d 84 (1967). One of the charges against the defendant Wiggs was an "assault . . . with a deadly weapon, to wit, a gallon glass jar, by threatening to hit [the victim] with the said jar." The Court, distinguishing *Randolph* on the ground that it was a prosecution for a statutory crime and citing *Porter,* held the warrant insufficient to charge an assault with a deadly weapon. The Court, however, placed some reliance on the allegation in the warrant that defendant merely threatened the victim with the jar. It also recognized, 269 N.C. at 514, 153 S.E. 2d at 89, that there are difficult "borderline cases, such as *State v. Phillips,* 104 N.C. 786, 10 S.E. 463, in which an indictment charging an assault 'upon one W. R. Butler, with a *certain deadly weapon,* to wit, *with a club,*' etc., was held sufficient." (Emphasis original.)

Adhering to the rule that an indictment which uses the language of the statute ordinarily is sufficient, *State v. Randolph, supra; State v. Gregory, supra,*[6] and following the reasoning in *Gregory,* we could limit the holding in *Porter* to warrants charg-

---

5. "As we have stated, the effect of the 1919 Act—section 4214, Michie's Code, *supra*—is to create a separate and distinct statutory offense in which are incorporated as essentials to the crime a number of circumstances theretofore considered merely as an aggravation of the assault—amongst them the fact of serious injury. In our opinion, the statement in the indictment that the assault inflicted serious injury is sufficient without further elaboration, and the fact becomes a matter of proof upon the trial. Except as a convenience in determining the jurisdiction of the court in the first instance, it is questionable whether the insistence that so significant an expression as 'serious injury' be further explained served any useful purpose, even at common law. In the present instance, we feel that the more reasonable rules pertaining to indictments for statutory crimes should be pursued.

"As a general rule, an indictment is sufficient when it charges the offense in the language of the statute." 223 N.C. at 420, 27 S.E. 2d at 143.

6. For a discussion of the general rule and several exceptions thereto see Note, 35 N.C. L. Rev. 118 (1956).

ing common law assaults and apply the *Gregory* rationale only to indictments under General Statute 14-32. This approach would reconcile *Porter, Randolph,* and *Wiggs.* The result would be different pleading requirements with respect to the deadly weapon element in warrants charging common law misdemeanor .assaults on the one hand and indictments charging statutory felony assaults on the other. We could, alternatively, continue to follow *Porter* and apply its rule to common law and statutory offenses alike. We would then, of course, ignore the holdings and rationales of *Gregory* and *Randolph.*

Whether *Porter* was the result of an undue concern for the trial court's ability to determine, *in limine,* its jurisdiction in assault cases, or of the meticulous pleading requirements of the common law, we think the better course is simply to declare that whatever validity *Porter* had at the time the case arose, it is out of step with modern notions of criminal pleading and should be overruled.

[1, 2] We have already alluded to the rule that an indictment couched in the language of the statute is generally sufficient to charge the statutory offense. It is also generally true that indictments and warrants need only allege the ultimate facts constituting each element of the criminal offense. Evidentiary matters need not be alleged. *State v. Beach,* 283 N.C. 261, 271, 196 S.E. 2d 214, 221 (1973); *State v. Greer,* 238 N.C. 325, 328-29, 77 S.E. 2d 917, 920 (1953); 42 C.J.S. Indictments and Information, § 115 (1944). General Statute 15A-924(a)(5), in effect at the time this indictment was returned and applicable thereto,[7] provides in part: "A criminal pleading must contain . . . a plain and concise factual statement in each count which, *without allegations of an evidentiary nature,* asserts facts supporting every element of a criminal offense and the defendant's commission thereof with sufficient precision clearly to apprise the defendant . . . of the conduct which is the subject of the accusation." (Emphasis supplied.) Warrants and bills of indictment are generally sufficient if they charge the offense "in a plain, intelligible, and explicit manner with averments sufficient to enable the court to proceed to judg-

---

7. While the warrant in this case was executed on 26 June 1975, the indictment was returned at the 8 September 1975 Session of Person Superior Court. G.S. 15A-924 is a codification of Chapter 1286 of the 1973 Session Laws. Section 31 of Chapter 1286 provides: "This act becomes effective on July 1, 1975, and is applicable to all criminal proceedings begun on and after that date and each provision is applicable to criminal proceedings pending on that date to the extent practicable, except Section 12 of this act which becomes effective on July 1, 1974."

ment and bar a subsequent prosecution for the same offense. G.S. 15-153."[8] *State v. Arnold*, 285 N.C. 751, 755, 208 S.E. 2d 646, 648 (1974).

We said in *State v. Greer, supra*, 238 N.C. at 327, 77 S.E. 2d at 919 (1953), that an indictment (and the same holds true for warrants) "must allege lucidly and accurately all the essential elements of the offense endeavored to be charged" in order that the defendant may be duly informed of the charges against him,[9] protected from double jeopardy, and able to prepare for trial, and that the court may be able to pronounce an appropriate sentence upon a conviction or plea. *See also State v. Gregory, supra*, 223 N.C. 415, 27 S.E. 2d 149 (1943).

Specifically, with regard to an indictment or warrant charging the offense of assault with a deadly weapon, we said in *State v. Wiggs, supra*, 269 N.C. at 513, 153 S.E. 2d at 89:

> "The requisites of an indictment or warrant charging the criminal offense of assault with a deadly weapon are set forth in 6 C.J.S., Assault and Battery § 110g(2), as follows: 'In an indictment for an assault with a deadly or dangerous weapon, the dangerous or deadly character of the weapon must be averred, either in the language of the statute, or by a statement of facts from which the court can see that it necessarily was such. It is only necessary, however, to describe and charge the weapon to be deadly or dangerous where it is a weapon the ordinary name of which does not, *ex vi termini*, import its deadly or dangerous character; if it is a weapon the ordinary name of which imports its deadly or dangerous character, *ex vi termini*, it is sufficient to describe it by its name, without alleging that it was a deadly or dangerous weapon.' "

[3] Guided by the foregoing principles, we hold that it is sufficient for indictments or warrants seeking to charge a crime in which one of the elements is the use of a deadly weapon (1) to name the weapon and (2) either to state expressly that the

---

8. G.S. 15-153 provides: "*Bill or warrant not quashed for informality.* — Every criminal proceeding by warrant, indictment, information, or impeachment is sufficient in form for all intents and purposes if it expresses the charge against the defendant in a plain, intelligible, and explicit manner; and the same shall not be quashed, nor the judgment thereon stayed, by reason of any informality or refinement, if in the bill or proceeding, sufficient matter appears to enable the court to proceed to judgment."

9. *See* N.C. Constitution, Article I, § 23.

weapon used was a "deadly weapon" or to allege such facts as would *necessarily* demonstrate the deadly character of the weapon. Whether the state can prove the allegation is, of course, a question of evidence which cannot be determined until trial.

[4] The indictment in this case was, therefore, sufficient to support a verdict of guilty of assault with a deadly weapon and a judgment based thereon.

II

[5] While the Court of Appeals did not reach this question, defendant also assigns as error the failure of the trial judge to submit to the jury a possible verdict of guilty of simple assault. We find merit in this assignment.

The state's evidence tends to show the following: On 13 June 1975 defendant's car was parked in the middle of Lamar Street in Roxboro while defendant talked with someone on a water truck parked at the side of the street. Grover A. Whitfield was driving home on Lamar Street and found his way blocked by the two vehicles. He asked defendant to move his car, and after about five minutes defendant complied. Whitfield then proceeded to the Imperial Service Station. As Whitfield was stopped at the station, defendant appeared and attempted to force him out of his car. Whitfield got out of the car and the two men began fighting. Defendant pursued Whitfield into the service station building, picked up a large, heavy stick, and began swinging it at him. Whitfield described this attack as follows:

> "I was inside the service station when Mr. Palmer came in and I pushed the chair back towards him, thinking he would go back out. I went out the other door of the service station and he came out behind me. I was inside the service station for just a few seconds.
>
> "Mr. Palmer hit me on the arm four or five different times with the stick. I received several knots and things on my arms but did not receive any medical treatment for the injuries to my arms. My arm was not seriously injured."

One of the service station attendants, Lacy Compton, started to call the police but abandoned the idea when defendant threatened him with the stick. Another attendant, Gary Compton, pointed a

gun in the air and pulled the trigger, but it failed to fire. Then defendant left the station.

Ten or twelve minutes later defendant returned to the service station with his brother. They both attacked Whitfield as he got out of his car, knocking him to the ground and stomping him repeatedly in the face. The stick was *not* used during this second fight. As a result of the second fight Whitfield lost ten of his teeth and his face was severely bruised. Defendant and his brother left briefly and then returned just as the police arrived.

Defendant's evidence presented a somewhat different picture of the incident: As Whitfield drove by he cursed the defendant, who then followed him to the service station to demand an explanation. They began to fight and Whitfield ran into the station building. Defendant picked up the stick, but he neither hit Whitfield nor threatened the attendant with it. As defendant started to leave Whitfield cursed him again, and when he came back into the building Whitfield hit him in the side of his head with the stick so that he later required seven stitches. About this time Gary Compton misfired the gun while he was pointing it *at defendant*. Bleeding badly, defendant left in his car. He started to go to the hospital but changed his mind and returned to the service station. While he and Whitfield were fighting the second time, defendant's brother arrived and managed to extricate defendant from the fray. At no time did defendant ever hit Whitfield with the heavy stick.

The trial judge submitted six alternative verdicts: guilty of assault with a deadly weapon with intent to kill inflicting serious injury; guilty of assault with a deadly weapon with intent to kill;[10] guilty of assault with a deadly weapon inflicting serious injury,[11] guilty of assault with a deadly weapon; guilty of assault inflicting serious injury;[12] or not guilty. On each of these possible verdicts the trial judge limited the jury's consideration on the assault element itself to the assault *with the stick*. He did not permit the jury to consider the second beating.[13]

---

10. A felony punishable by a fine, imprisonment for not more than ten years, or both. G.S. 14-32(c).

11. A felony punishable by a fine, imprisonment for not more than ten years, or both. G.S. 14-32(b).

12. A misdemeanor punishable by a fine, imprisonment for not more than 2 years, or both. G.S. 14-33(b)(1).

13. The trial judge also submitted written issues to the jury which appear in the record, together with the answers thereto, as follows: "1st Issue: Did defendant intentionally assault Grover Whitfield by striking him with a stick? Answer: Yes. 2d Issue: Was that stick, as used, a deadly weapon? Answer: Yes. 3rd Issue:

---

### State v. Palmer

---

It is clear that this limitation on the jury's consideration of the case was due to the trial judge's understanding of the charge as laid in the bill of indictment.[14] The bill as drawn seems to refer to only one assault—one made with a stick.[15] According to the state's evidence, however, there were two distinct assaults. The first one was committed with the stick. Some ten or twelve minutes later there was another assault without the stick. The indictment should have alleged these assaults separately with a separate count addressed to each. General Statute 15A-924, applicable to this indictment,[16] provides: "A criminal pleading must contain . . . a separate count addressed to each offense charged, but allegations in one count may be incorporated by reference in another count."

Under the theory upon which this case was tried, whether simple assault should have been submitted as an alternative verdict depends upon whether the stick was a deadly weapon per se, or as a matter of law. If it was, simple assault need not have been submitted. If it was not, the jury should have been given this additional alternative.

We hold that the stick was not, under this evidence, a deadly weapon as a matter of law. A deadly weapon is "any instrument which is likely to produce death or great bodily harm, under the circumstances of its use . . . . The deadly character of the weapon depends sometimes more upon the manner of its use, and the condition of the person assaulted, than upon the intrinsic character of

---

Did defendant have at the time a specific intent to kill Grover Whitfield? Answer: No. 4th Issue: Did defendant thereby inflict on Whitfield serious injury? Answer: No."

While the jury was deliberating it returned to ask a question of the trial judge and the following colloquy occurred: "COURT: All right, sir, will you state your question? FOREMAN: As outlined in your four issues, we have arrived at the fourth issue and the question was as stated . . . did the defendant thereby inflict on Whitfield serious injury? Our question is: Are we to consider the entire fight, the second fight or are we to consider only the fight which occurred with the stick? COURT: Thank you, sir. You may be seated. Mr. Tolin and Mr. Waters, may I see you up here? (DISCUSSION AT THE BENCH.) COURT: Mr. Foreman and members of the jury, the issue was drawn in that fashion intentionally. The bill of indictment in this case alleges assault with a deadly weapon, to wit: a stick. You may, therefore, consider only on the question of whether serious injury was inflicted, whether the defendant inflicted serious injury with the use of a stick. An injury inflicted by any other means under the evidence you are not to consider. The burden, of course, is upon the State to prove by evidence beyond a reasonable doubt that the defendant inflicted serious injury by the use of a stick on Whitfield. You may retire and resume your deliberation."

14. *See* n. 13, *supra.*

15. The indictment does describe the injury inflicted by the second assault as it is revealed by the state's evidence. Whether the indictment as drawn could be construed as charging two separate assaults is a question not now before us. Obviously the trial judge did not so construe it. If he erred, the error was in defendant's favor.

16. *See* n. 7, *supra.*

the weapon itself." *State v. Smith,* 187 N.C. 469, 470, 121 S.E. 737 (1924). Where there is no conflict in the evidence regarding both the nature of the weapon and the manner of its use, the applicable principles in determining its deadly character are well stated in *Smith, id.*:

> "Where the alleged deadly weapon and the manner of its use are of such character as to admit of but one conclusion, the question as to whether or not it is deadly within the foregoing definition is one of law, and the Court must take the responsibility of so declaring. . . . But where it may or may not be likely to produce fatal results, according to the manner of its use, or the part of the body at which the blow is aimed, its alleged deadly character is one of fact to be determined by the jury." (Citation omitted.)[17]

If there is a conflict in the evidence regarding either the nature of the weapon or the manner of its use, with some of the evidence tending to show that the weapon used or as used would not likely produce death or great bodily harm and other evidence tending to show the contrary, the jury must, of course, resolve the conflict.

In this case there is no evidentiary conflict regarding the nature of the weapon used nor in the manner of its use against Whitfield. Defendant's evidence was that he picked up the stick but did not use it at all. Nevertheless if the state's version of its use was accepted by the jury we believe reasonable persons could draw different conclusions regarding its deadly character. The question of its deadly character must therefore be, as in fact it was in this case, left to the jury's determination.

Had the jury not determined that the stick was a deadly weapon, defendant, because of the jury's determination of the other elements of aggravation in defendant's favor, could have been convicted only of simple assault. This option was not given to the jury. It was raised by the evidence. The case, therefore, falls within the principle that a defendant is entitled to have all lesser degrees of offenses supported by the evidence submitted to

---

17. Illustrative cases declaring the weapon to be deadly as a matter of law are *State v. Hobbs,* 216 N.C. 14, 3 S.E. 2d 431 (1939) (brick or rock hurled through windshield of truck) and *State v. Craton,* 28 N.C. 164 (1845) (heavy pine "stub" which defendant swung so as to fracture deceased's skull). Illustrative cases holding the deadly character of the weapon to be a jury question are *State v. Cauley,* 244 N.C. 701, 94 S.E. 2d 915 (1956) (leather belt with metal buckle used to inflict severe bruises over body of a three-year-old child), and *State v. Archbell,* 139 N.C. 537, 51 S.E. 801 (1905) (heavy leather strap used to beat defendant's sick, frail wife).

the jury as possible alternate verdicts. *State v. Bell*, 284 N.C. 416, 200 S.E. 2d 601 (1973); *State v. Wrenn*, 279 N.C. 676, 185 S.E. 2d 129 (1971). Failure to submit this option was not cured by the verdict finding that the stick was a deadly weapon. *See State v. Bell, supra; State v. Riera*, 276 N.C. 361, 172 S.E. 2d 535 (1970). The reason is that it cannot be known whether the jury would have convicted defendant of the lesser offense if it had been permitted to do so.[18] *State v. Thacker*, 281 N.C. 447, 189 S.E. 2d 145 (1972); *State v. Wrenn, supra*. Failure to submit simple assault as a possible verdict was therefore error prejudicial to defendant. It entitles him to a new trial.

The judgment of the Court of Appeals is reversed. For error committed the case is remanded with direction that it be further remanded to the Superior Court Division in order that defendant may receive a new trial.

Reversed and remanded.

Chief Justice SHARP dissenting.

I am in accord with the decision of the majority that the indictment in this case is sufficient to support the verdict of guilty of assault with a deadly weapon and the judgment based thereon. I dissent from the majority's decision that defendant is entitled to a new trial because the court failed to submit the issue of simple assault as a possible verdict.

It is correctly stated in the majority opinion that "there is no evidentiary conflict regarding the nature of the weapon used [stick] nor in the manner of its use." The stick, which accompanied the case on appeal to this Court as an exhibit, is described in the opinion and correctly denominated there as "a hard wooden club." As defined in Webster's Third New International Dictionary (1961) a club is "a heavy staff, esp. of wood usu. tapering . . . wielded with the hand as a striking weapon . . . ." The stick in this case fits this definition precisely.

In my view this stick, when used as a club by an able bodied man, is a deadly weapon per se, and all the evidence tends to

---

18. If the jury had answered the second issue submitted to it, "No," *see* n. 13, *supra*, it could not have returned a verdict which comported with the trial judge's instructions. This fact alone, rather than the evidence, might have unduly impelled it to answer the issue "Yes."

show that defendant used it as such. *See State v. Perry*, 226 N.C. 530, 39 S.E. 2d 460 (1946). Defendant, according to his testimony, is 35 years old and employed by the State Highway Department. "The nature of his duties" are "the cutting of new highways, straightening up and different things."

At the beginning of the fight, after defendant and Whitfield had engaged in fisticuffs, Whitfield went into the filling station. Defendant followed and, inside, he picked up the stick. Whitfield described subsequent events as follows:

"When I went out he started swinging at me and tried to hit me over the head with it. He tried to hit me on the head but I threw up my arms and blocked it off. I had big knots on my arms. He hit me on the arm with the stick. I hit him in an effort to stop him from hitting me with the stick. I caught hold of the stick, trying to keep him from hitting me on the head, but I could not get it away from him. After he saw that he could not do much to me with a stick, the defendant left in an automobile."

A short time thereafter defendant returned to the filling station. This time Whitfield had the stick, and when defendant stuck his head in the service station door Whitfield hit him "in the side of the head with the stick." As a result of the wound thus inflicted defendant said that "seven stitches were performed at the Person County Memorial Hospital the same afternoon and [he] was in a lot of pain from the cut."

This stick, used offensively by either defendant or Whitfield was clearly a deadly weapon. That Whitfield was able to protect his head from the blows which defendant attempted to inflict upon him with the stick and that the blows upon his arms raised knots instead of breaking flesh and bones does not change the character of the weapon or the assault which defendant made upon him. Had defendant been attempting to shoot Whitfield with a gun and Whitfield had deflected the shot upward by grabbing his arm or the gun, defendant would have been nonetheless guilty of an assault with a deadly weapon. In *State v. Hobbs*, 216 N.C. 14, 3 S.E. 2d 431 (1939) this Court held that the trial court correctly charged the jury that "if the defendant intentionally threw a brick at the prosecuting witness and struck and broke the windshield of the truck he was driving, although he may not have stricken the witness, the defendant was guilty of an assault with

a deadly weapon. The Court further held that the trial judge's failure to submit to the jury the charge of a simple assault was not error "for the reason that there is no evidence of simple assault."

The serious injury which defendant inflicted upon Whitfield occurred, of course, when defendant stomped his face. The trial judge, however, being of the opinion that the indictment did not encompass that assault, instructed the jury to consider only the assault in which defendant used the stick.

I vote to affirm the judgment of the Superior Court.