IN THE SUPREME COURT OF NORTH CAROLINA

No. 233PA16

Filed 29 September 2017

STATE OF NORTH CAROLINA

v.

ALONZO ANTONIO MURRELL

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous, unpublished decision of the Court of Appeals, ___ N.C. App. ___, ___ S.E.2d ___ (2016), arresting a judgment entered on 15 May 2015 by Judge John E. Nobles, Jr., in Superior Court, Onslow County, and remanding for resentencing. Heard in the Supreme Court on 10 April 2017.

*Joshua H. Stein, Attorney General, by Oliver G. Wheeler, IV, Assistant Attorney General, for the State-appellant.*

*Glenn Gerding, Appellate Defender, by Daniel L. Spiegel, Assistant Appellate Defender, for defendant-appellee.*

ERVIN, Justice.

The issue before us in this case is whether an indictment returned for the purpose of charging defendant with the offense of robbery with a dangerous weapon sufficed to give the trial court jurisdiction to enter judgment against defendant based upon his conviction for having committed that offense. After careful consideration of the record in light of the applicable law, we hold that the challenged indictment was fatally defective because it did not sufficiently allege all of the essential elements of

the offense of robbery with a dangerous weapon and, for that reason, affirm the Court of Appeals' decision.

At 11:45 a.m. on 13 September 2013, Stacy Phillips, a teller at a PNC Bank branch located in Jacksonville, was the victim of a robbery. At that time, a man entered the bank and laid a note on the counter in front of Ms. Phillips. "[T]he first thing [Ms. Phillips] saw on [the note] was 'armed,'" which led her to believe that a robbery was in progress. More specifically, the note that the man placed before Ms. Phillips read "armed" and instructed, "eyes down, 2,000 — or two straps of hundreds, two straps of fifties, two straps of twenties, no devices." In spite of the fact that the only item that she saw in the robber's possession was a case that he carried under his arm, Ms. Phillips believed that the robber was armed based upon the information contained in the note that he presented to her.

Although Ms. Phillips attempted to grab the note, the robber said, "Don't touch it." At that point, Ms. Phillips gave the robber a bait strap, which included $330 in marked bills; some additional $20, $50, and $100 bills; and a dye pack, all of which the robber placed in the case. As the robber reached the door and began to leave the bank, Ms. Phillips activated a silent alarm and complied with PNC's robbery protocol by calling the police, locking the facility's doors, preparing an account of what she had experienced, and providing assistance to the other persons present at the time of the robbery.

Detective Gary Manning of the Jacksonville Police Department, accompanied by several other officers, arrived at the bank shortly after the robbery. After securing the crime scene and obtaining information from other witnesses, Detective Manning viewed surveillance video footage related to the robbery. As he did so, Detective Manning observed that a "red bloom . . . emanat[ed] from the . . . front passenger area of the vehicle" apparently used by the robber to facilitate his escape. According to Karen Salefsky, the bank manager, the "red bloom" that could be seen in the surveillance video resulted from the explosion of the dye pack contained in the bait strap.

On the following day, Detective Manning received a call from an individual who "had found money in a dumpster in Phoenix Park Apartments." While searching the dumpster, Detective Manning retrieved money "stained with a bright red" dye "consistent with the manner in which a dye pack is prepared." In addition, Detective Manning determined that the serial numbers of the currency retrieved from the dumpster matched those printed on the currency taken during the robbery.

On 23 September 2013, Crime Stoppers received a tip identifying the suspect depicted in the surveillance footage, which had been released to the public, as defendant, a resident of Kinston. After noticing "a striking resemblance between photographs . . . of [defendant] and the person depicted in the surveillance footage," Detective Manning began to investigate defendant's possible connection to the robbery. Detective Manning learned that defendant had access to a vehicle

resembling the one shown in the surveillance video footage, which was a black Suzuki XL7 that was registered to defendant's girlfriend, Heather Crider. On 4 October 2013, Ms. Crider's Suzuki XL7 was located in downtown Kinston. While searching the vehicle with Ms. Crider's consent, Detective Manning observed red smudges on the vehicle's exterior consistent with those that would have been made during the release of the dye pack contained in the bait strap.

At the time that he was arrested in Kinston on 11 October 2013, defendant possessed a duffle bag that contained, among other things, a green bed sheet stained with red material that was consistent with the color of certain stains found in the dumpster and on the exterior of Ms. Crider's Suzuki XL7. After waiving his *Miranda* rights, defendant admitted that he had robbed the Jacksonville PNC Bank and gave an account of that episode consistent with the information that Detective Manning developed during his investigation. Although defendant told Detective Manning that he had been "provided" with a "pee shooter," which Detective Manning "took to mean a small caliber pistol," before entering the PNC Bank, investigating officers never recovered it or any other weapon believed to have been used during the robbery.

On 12 August 2014, the Onslow County grand jury returned a bill of indictment that was intended to charge defendant with robbery with a dangerous weapon. The indictment alleged, in pertinent part, that:

> defendant [ ] unlawfully, willfully and feloniously did steal, take and carry away another's personal property, U.S. Money from PNC Financial Services Group, Inc., at the

location of "PNC Bank" . . . when a bank employee, Stacy Phillips was present. The defendant committed this act by way of it reasonably appearing to the victim Stacy Phillips that a dangerous weapon was in the defendant's possession, being used and threatened to be used by communicating that he was armed to her in a note with demands and instructions for her to complete, whereby the life of Stacy Phillips was threatened and endangered.

The charges against defendant came on for trial before the trial court and a jury at the 11 May 2015 criminal session of the Superior Court, Onslow County. On 15 May 2015, the jury returned a verdict convicting defendant as charged. Based upon the jury's verdict, the trial court entered a judgment sentencing defendant to a term of fifty-three to seventy-six months imprisonment. Defendant noted an appeal from the trial court's judgment to the Court of Appeals.

In seeking relief from the trial court's judgment before the Court of Appeals, defendant argued, among other things, that the trial court had erred by failing to dismiss the indictment returned against him in this case on the grounds that it failed to properly charge him with the commission of robbery with a dangerous weapon. According to defendant, "[t]he requirements for an indictment charging a crime in which one of the elements is the use of a deadly weapon are (1) to 'name the weapon and (2) either to state expressly that the weapon used was a "deadly weapon" or to allege such facts as would necessarily demonstrate the deadly character of the weapon,' " quoting *State v. Brinson*, 337 N.C. 764, 768, 448 S.E.2d 822, 824 (1994)

(emphasis omitted) (quoting *State v. Palmer*, 293 N.C. 633, 639-40, 239 S.E.2d 406, 411 (1997)).  More specifically, defendant asserted that

> [a]lthough the language "robbery with a dangerous weapon" appears in the caption, the indictment fails to name any weapon.  Since no weapon was named, the State could not expressly state that the weapon was a deadly weapon or allege facts that demonstrate the deadly character of the weapon.  The indictment also fails to allege any facts of how the victim's life was threatened or endangered.  The indictment simply states that it appeared to the victim that Mr. Murrell possessed a "dangerous weapon."

In defendant's view, "[b]ecause the dangerous weapon [that] Mr. Murrell allegedly possessed inside the bank was not named[,] the trial court was without subject matter jurisdiction."  In support of this contention, defendant pointed out that "the 'implement' alleged in the indictment is a note which contained the word 'armed,' " which "is not an article, instrument or substance likely to produce death or great bodily harm," citing *State v. Wiggins*, 78 N.C. App. 405, 406, 337 S.E.2d 198, 199 (1985), and which "cannot[, for that reason,] constitute a dangerous weapon for purposes of robbery with a dangerous weapon pursuant to N.C.[G.S.] § 14-87."

The State, on the other hand, argued that the indictment intended to charge defendant with robbery with a dangerous weapon sufficed to establish the trial court's jurisdiction because it alleged "that Defendant handed a note saying 'armed' to the victim, and that it reasonably appeared to the victim that Defendant possessed a 'dangerous weapon.' "  According to the State, the indictment at issue in this case

alleged the essential elements of the crime of robbery with a deadly weapon, citing *State v. Beaty*, 306 N.C. 491, 496, 293 S.E.2d 760, 764 (1982), *disapproved of on other grounds by State v. White*, 322 N.C. 506, 518, 369 S.E.2d 813, 819 (1988), given that the indictment included references to "deadly weapon" and "armed."

On 19 April 2016, the Court of Appeals filed an opinion holding that the indictment intended to charge defendant with robbery with a dangerous weapon was fatally defective because it failed to name any dangerous weapon that defendant allegedly employed. *State v. Murrell*, ___ N.C. App ___, ___ S.E.2d ___, 2016 WL 1565576, at \*5, (Apr. 19, 2016) (No. COA15-1097) (unpublished). As a result, the Court of Appeals arrested judgment with respect to the charge of robbery with a dangerous weapon. *Id.* However, given that the challenged indictment sufficiently alleged the commission of a common law robbery, the Court of Appeals remanded this case to the Superior Court, Onslow County, "for entry of judgment and resentencing on common law robbery." *Id.* (quoting *State v. Marshall*, 188 N.C App. 744, 752, 656 S.E.2d 709, 715, *disc. rev. denied*, 362 N.C. 368, 661 S.E.2d 890 (2008)). On 22 September 2016, this Court granted the State's discretionary review petition.

In seeking to persuade this Court to reverse the Court of Appeals' decision, the State argues that the indictment at issue in this case sufficed to charge the commission of a robbery with a dangerous weapon because it alleged all of the elements of that criminal offense. As an initial matter, the State notes that this Court has held that "[i]t is sufficient for indictments or warrants seeking to charge a crime

in which one of the elements is the use of a deadly weapon (1) to name the weapon and (2) either to state expressly that the weapon used was a 'deadly weapon' or to allege such facts as would necessarily demonstrate the deadly character of the weapon," quoting *Palmer*, 293 N.C. at 639-40, 239 S.E.2d at 411 (emphasis omitted). The indictment at issue in this case satisfies the first of these two approaches, according to the State, because "the indictment *did* name a weapon" given the allegation that defendant presented a "note saying that [he] was armed," and because this statement "amounts to [an allegation concerning the] actual threatened use of a dangerous weapon." In addition, the State asserts that the indictment at issue in this case satisfies the second of the approaches delineated in *Palmer* because "the indictment here expressly states that it appeared that Defendant possessed a 'dangerous weapon.' " As a result, contrary to the Court of Appeals' decision, the State contends that "the indictment meets the aforementioned requirements for robbery with a dangerous weapon."

On the other hand, defendant asserts that the indictment that was intended to charge defendant with robbery with a dangerous weapon in this case failed to satisfy either of the approaches delineated in *Palmer* and did not, for that reason, suffice to support defendant's conviction for robbery with a dangerous weapon given its failure to "specify a dangerous weapon," to "set forth any facts describing a dangerous weapon," or to "allege that Mr. Murrell possessed any weapon at all." According to defendant, *Palmer* requires "some minimal degree of specificity in describing the

dangerous weapon at issue in an indictment for robbery with a dangerous weapon." In defendant's view, "[t]he State . . . must prove that the instrument in question is a dangerous weapon"; in the event that "the State cannot name a dangerous weapon nor describe one, the State cannot allege nor prove [armed robbery]." A note containing the word "armed," cannot, in defendant's view, constitute a "dangerous weapon." According to defendant, the indictment fails to allege that defendant possessed a dangerous weapon while committing the robbery, citing *State v. Keller*, 214 N.C. 447, 449, 199 S.E. 620, 621 (1938) (holding that robbery with a dangerous weapon "requires as a constituent element the presence of firearms [or some other dangerous weapon]"). A mere allegation that defendant informed the bank teller that he was armed simply "fails to allege that Mr. Murrell in fact possessed a dangerous weapon." (Emphasis omitted.) Put another way, defendant argues that the indictment alleged that defendant "conveyed the impression that he possessed some type of weapon" while failing to allege the actual possession of a dangerous weapon. As a result, defendant asserts that "[t]he indictment was fatally defective and conferred jurisdiction only for common law robbery."

According to well-established North Carolina law, a valid indictment is necessary to confer jurisdiction upon the trial court. *See, e.g., State v. Morgan*, 226 N.C. 414, 415, 38 S.E.2d 166, 167 (1946); *see also State v. Snyder*, 343 N.C. 61, 65, 468 S.E.2d 221, 224 (1996). Generally speaking, an indictment is sufficient if it: (1) "apprises the defendant of the charge against him with enough certainty to enable

him to prepare his defense"; (2) "protect[s] him from subsequent prosecution for the same offense"; and (3) "enable[s] the court to know what judgment to pronounce in the event of conviction." *State v. Coker*, 312 N.C. 432, 434-35, 323 S.E.2d 343, 346 (1984) (citations omitted); *see also* N.C.G.S. § 15A-924(a)(5) (2015) (requiring that a criminal pleading contain "[a] plain and concise factual statement in each count which, without allegations of an evidentiary nature, asserts facts supporting every element of a criminal offense and the defendant's commission thereof with sufficient precision clearly to apprise the defendant . . . of the conduct which is the subject of the accusation"). In order to satisfy the relevant statutory requirements, including the provision of adequate notice, an "indictment must allege lucidly and accurately all the essential elements of the offense endeavored to be charged." *State v. Ellis*, 368 N.C. 342, 344, 776 S.E.2d 675, 677 (2015) (quoting *State v. Hunt*, 357 N.C. 257, 267, 582 S.E.2d 593, 600, *cert. denied*, 539 U.S. 985, 124 S. Ct. 44, 156 L. Ed. 2d 702 (2003)). Consistent with this general rule, "[a]n indictment charging a statutory offense must allege all of the essential elements of the offense." *Snyder*, 343 N.C. at 65, 468 S.E.2d at 224 (citation omitted). "A criminal pleading . . . is fatally defective if it 'fails to state some essential and necessary element of the offense of which the defendant is found guilty,' " *Ellis*, 368 N.C. at 344, 776 S.E.2d at 677 (quoting *State v. Gregory*, 223 N.C. 415, 418, 27 S.E.2d 140, 142 (1943)), with the presence or absence of such a fatal defect to be "judged based solely upon the language of the criminal pleading in question without giving any consideration to the evidence that is

ultimately offered in support of the accusation contained in that pleading," *id*. at 347,

776 S.E.2d at 679.

> Any person or persons who, having in possession or with the use or threatened use of any firearms or other dangerous weapon, implement or means, whereby the life of a person is endangered or threatened, unlawfully takes or attempts to take personal property from another or from any place of business, residence or banking institution or any other place where there is a person or persons in attendance, at any time, either day or night . . . shall be guilty of a Class D felony.

N.C.G.S. § 14-87(a) (2015) (defining "Robbery with firearms or other dangerous

weapons"). As a result, the essential elements of the offense of robbery with a

dangerous weapon are (1) the unlawful taking or attempted taking of personal

property from another; (2) the possession, use, or threatened use of firearms or other

dangerous weapon,[1] implement, or means; and (3) a danger or threat to the life of the

victim. *See State v. Moore*, 279 N.C. 455, 458, 183 S.E.2d 546, 548 (1971); *see also*

N.C.G.S. § 14-87(a). Although the indictment at issue in this case clearly alleges that

defendant unlawfully took the personal property of another while threatening the life

---

[1] A "well-accepted definition of a deadly weapon in this State" is "a weapon which is likely to cause death or serious bodily injury." *State v. Sturdivant*, 304 N.C. 293, 303, 283 S.E.2d 719, 727 (1981) (citations omitted); *see also State v. Watkins*, 200 N.C. 692, 694, 158 S.E. 393, 394 (1931) (stating that "[a]ny instrument which is likely to produce death or great bodily harm, under the circumstances of its use, is properly denominated a deadly weapon"). "Whether an instrument can be considered a dangerous weapon depends upon the nature of the instrument, the manner in which defendant used it or threatened to use it, and in some cases the victim's perception of the instrument and its use." *State v. Peacock*, 313 N.C. 554, 563, 330 S.E.2d 190, 196 (1985) (citations omitted) (finding that the victim's "life was endangered by defendant's use of the glass vase," with which he struck her head).

of the victim, we do not believe that the indictment adequately alleges the possession, use, or threatened use of firearms or other dangerous weapon, implement, or means.

As this Court has previously stated, "robbery *with* firearms of necessity requires as a constituent element the presence of firearms," *Keller*, 214 N.C. at 449, 199 S.E. at 621, or, by logical extension, the presence of a dangerous weapon. *See also State v. Joyner*, 295 N.C. 55, 63, 243 S.E.2d 367, 373 (1978) (stating that "[t]he question in an armed robbery case is whether a person's life was in fact endangered or threatened by defendant's possession, use or threatened use of a dangerous weapon, not whether the victim was scared or in fear of his life"). In evaluating the meaning of the statutory reference to "the use or threatened use of any firearms," N.C.G.S. § 14-87(a), we have previously determined that

> the word "use" as a noun has the meaning of an "act of employing anything, or state of being employed; application; employment . . . . The words "threatened use" coupled, as they are, with the preceding words clearly indicate the threatened act of employing. Hence, construed contextually the clause "*with* the use or threatened use" of a weapon, requires, in the one instance, or presupposes, in the other, the presence of the weapon with which the act may be executed or threatened.

*Keller*, 214 N.C. at 449, 199 S.E. at 621-22 (internal citations omitted); *see also State v. Hinton*, 361 N.C. 207, 211-12, 639 S.E.2d 437, 440 (2007) (stating that "the General Assembly intended to require the State to prove that a defendant used an external dangerous weapon before conviction under the statute is proper"); *State v. Williams*, 335 N.C. 518, 520, 438 S.E.2d 727, 728 (1994) (stating that, "[t]o establish robbery or

attempted robbery with a dangerous weapon, the State was required to prove beyond a reasonable doubt that the defendant possessed a firearm or other dangerous weapon at the time of the robbery or attempted robbery and that the victim's life was in danger or threatened") (citing N.C.G.S. § 14-87 (1986)); *State v. Gibbons*, 303 N.C. 484, 491, 279 S.E.2d 574, 578 (1981) (stating that "[o]ur interpretation, which requires both an act of possession and an act with the weapon which endangers or threatens the life of the victim gives substance to all of the terms of the statute"). As a result, an indictment sufficient to charge the offense of robbery with a dangerous weapon must allege the presence of a firearm or dangerous weapon used to threaten or endanger the life of a person.

In *State v. Palmer*, this Court, in addressing the manner in which the use of a "dangerous weapon" must be alleged,[2] held

> that it is sufficient for indictments . . . seeking to charge a crime in which one of the elements is the use of a deadly weapon (1) to name the weapon and (2) either to state expressly that the weapon used was a "deadly weapon" or to allege such facts as would *necessarily* demonstrate the deadly character of the weapon. Whether the state can prove the allegation is, of course, a question of evidence which cannot be determined until trial.

---

[2] "The terms 'dangerous' and 'deadly,' when used to describe a weapon, are practically synonymous." *Sturdivant*, 304 N.C. at 303, 283 S.E.2d at 727 (citing *Black's Law Dictionary* 355, 359 (5th ed. 1979)).

293 N.C. at 639-40, 239 S.E.2d at 411.[3]  For instance, in *State v. Brinson,* an indictment purporting to charge an assault with a deadly weapon alleged, in pertinent part, that the defendant "unlawfully, willfully and feloniously did assault John Delton Eason, Jr. . . . by . . . slamming his head against the cell bars, a deadly weapon, and floor.  The assault was intended to kill and resulted in serious injury, a broken neck . . . and . . . left the victim paralyzed."  *Brinson,* 337 N.C. at 767, 448 S.E.2d at 824.  This Court determined that the indictment satisfied the first of the two approaches delineated in *Palmer* because it "specifically referred to the cell bars and cell floor" and satisfied the second of the two approaches delineated in *Palmer* by stating that "the victim's broken neck and paralysis resulted from the 'assault,' " " 'necessarily demonstrat[ing] the deadly character' of" the cell bars and floor."  *Id.* at 768, 448 S.E.2d at 825 (quoting *Palmer,* 293 N.C. at 640, 239 S.E.2d at 411 (emphasis omitted)).

The indictment at issue in this case alleged that defendant took money "by way of it reasonably appearing to the victim . . . that a dangerous weapon was in the defendant's possession, being used and threatened to be used by communicating that he was armed to her in a note."  An allegation that it "reasonably appear[ed] . . . that

---

[3] As a result of the fact that "[t]he crime of armed robbery defined in [N.C.]G.S. [§] 14-87 includes an assault on the person with a deadly weapon," *State v. Richardson,* 279 N.C. 621, 628, 185 S.E.2d 102, 107 (1971), this case is controlled by *Palmer.*  The State does not, in its brief before this Court, question *Palmer*'s validity or suggest that it is not controlling in this case.  Instead, the State appears to argue that the allegations contained in the indictment at issue in this case are fully *Palmer*-compliant.

a dangerous weapon was in the defendant's possession" is simply not equivalent to an allegation that defendant actually possessed a weapon.[4]  In the event that the allegation that defendant was "armed" was intended to suggest that defendant possessed an unidentified weapon, the nature, identity, or deadly character of that unidentified weapon is not described at any point in the indictment.  *See State v. Hines*, 166 N.C. App. 202, 207, 600 S.E.2d 891, 895 (2004) (addressing a fatal variance claim, rather than a challenge to the indictment's sufficiency, arising under an indictment describing the weapon used in a robbery as "an unknown blunt force object causing trauma to the head of the victim.").  Simply put, the indictment at issue in this case provides no basis for a determination that defendant was "armed" with any implement that was inherently dangerous or used in such a manner as to threaten the infliction of death or serious injury.[5]  As a result, since the indictment returned

---

[4] The absence of a reference to any weapon differentiates this case from *Marshall*, 188 N.C. App. at 749-50, 656 S.E.2d at 713-14, in which the Court of Appeals determined that, while an allegation that the defendant's action in "keeping his hand in his coat" sufficiently "nam[ed] the weapon," the indictment was still fatally defective because "pretending to possess a dangerous weapon is not a dangerous weapon" and because the indictment "fail[ed] either to state expressly that the weapon was dangerous or to allege facts that necessarily demonstrat[ed] the dangerous nature of the weapon."  Instead, the indictment at issue in this case resembles the indictment at issue in *State v. Moses*, 154 N.C. App. 332, 335, 572 S.E.2d 223, 226 (2002), in which the count of the indictment returned for the purpose of charging defendant with assault with a deadly weapon inflicting serious injury alleged that the defendant "assault[ed] Mateo Mendez Jimenez with a deadly weapon" resulting "in the infliction of a serious injury, knocking out his teeth."

[5] Although the indictment does allege that it "reasonabl[y] appear[ed]" to Ms. Phillips that "a dangerous weapon was in the defendant's possession," that allegation is not tantamount to an assertion that defendant was, in fact, in possession of a dangerous weapon or that any such weapon was used to threaten Ms. Phillips with death or serious bodily harm.

against defendant in this case failed to sufficiently allege that defendant possessed, used, or threatened to use a dangerous weapon,[6] the Court of Appeals correctly held that the indictment returned against defendant in this case for the purpose of charging him with the commission of a robbery with a dangerous weapon was fatally defective.

AFFIRMED.


Justice JACKSON dissenting.

When bank employees resist robbery attempts, tragedy often results. The policy that bank employees should comply with a robber's demands has protected countless lives. Here, because no one resisted defendant's threat, no one was injured.

---

To be sure, this Court has found the evidence sufficient to support a defendant's conviction for robbery with a dangerous weapon based upon a presumption or inference arising from "the defendant's use of what appeared to the victim to be a firearm or other dangerous weapon." *State v. Joyner*, 312 N.C. 779, 786, 324 S.E.2d 841, 846 (1985). Rather than obviating the necessity for proof that the defendant actually possessed or utilized an implement that was, in fact, a dangerous weapon, *Joyner* and similar decisions allow a jury to find the possession or use of such an implement based upon testimony describing what the item reasonably appeared to be. As a result, there is no conflict between *Palmer* and decisions such as *Joyner*, none of which allow a defendant to be convicted of robbery with a dangerous weapon on the basis of a threat divorced from the actual possession or use of a deadly weapon.

[6] The State suggests that the indictment identifies the note that defendant allegedly displayed to Ms. Phillips as the required weapon. However, when the relevant portions of the indictment are read in their ordinary sense, the indictment simply asserts that the note was the means by which defendant informed Ms. Phillips that he was "armed."

Law enforcement eventually apprehended defendant, and the grand jury issued an indictment that notified defendant of the charge against him. Based upon this indictment, defendant was able to prepare adequately for trial. The jury considered the evidence and convicted defendant. Now, the majority sets aside the jury's verdict based upon an alleged error in wording. The indictment charging defendant with the offense of robbery with a dangerous weapon was sufficient to confer jurisdiction upon the trial court because the indictment clearly notified defendant of the charge against him, thus allowing him ample opportunity to prepare a defense. Accordingly, I respectfully dissent from the majority opinion.

In this case the indictment alleged that defendant:

> [u]nlawfully, willfully and feloniously did steal, take and carry away another's personal property, U.S. Money from PNC Financial Services Group, Inc. . . . when a bank employee, Stacy Phillips[,] was present. The defendant committed this act by way of it reasonably appearing to the victim[,] Stacy Phillips[,] that a dangerous weapon was in the defendant's possession, being used and threatened to be used by communicating that he was armed to her in a note with demands and instructions for her to complete, whereby the life of Stacy Phillips was threatened and endangered.

The majority holds that the indictment "clearly alleges that defendant unlawfully took the personal property of another while threatening the life of the victim" but is nonetheless "fatally defective because it did not sufficiently allege all of the essential elements of the offense of robbery with a dangerous weapon." Specifically, the

majority notes that the indictment fails to "adequately allege[ ] the possession, use or threatened use of firearms or other dangerous weapon, implement or means." In reaching this conclusion, the majority essentially holds that the indictment is only sufficient to support the lesser included offense of common law robbery.

Unlike common law robbery, the offense of robbery with a dangerous weapon requires the use or threatened use of a dangerous weapon. According to section 14-87(a):

> Any person or persons who, having in possession or with the use or *threatened* use of any firearms or other dangerous weapon, implement or means, whereby the life of a person is endangered or *threatened*, unlawfully takes or attempts to take personal property from another or from any place of business, residence or banking institution or any other place where there is a person or persons in attendance, at any time, either day or night, or who aids or abets any such person or persons in the commission of such crime, shall be guilty of a Class D felony.

N.C.G.S. § 14-87(a) (2015) (emphases added). "The critical and essential difference between" the offense set forth in N.C.G.S. § 14-87—robbery with a dangerous weapon or armed robbery—and common law robbery is that for a jury to find a defendant guilty of armed robbery, "the victim must be endangered or threatened by the use or *threatened use* of a 'firearm or other dangerous weapon, implement or means.' " *State v. Bailey*, 278 N.C. 80, 87, 178 S.E.2d 809, 813 (1971) (emphasis added) (quoting *State v. Covington*, 273 N.C. 690, 700, 161 S.E.2d 140, 147 (1968)). If the threatened use of a dangerous weapon is sufficient to sustain a *conviction* for the offense, then the

same allegation must be sufficient to place defendant on *notice* of that same charged offense. To rule otherwise seems to create the classic chicken and egg dilemma. How can the State convict a person of a crime for which he cannot be indicted? Adopting the majority's logic would inhibit, if not outright prohibit, such prosecutions. This cannot be what the legislature intended.

In so doing, the majority also discounts the effect of this threat upon the person subjected to such a threat—an effect specifically contemplated by both the statute and our precedent. Our cases make clear that it is not only the possession of a weapon that meets the threshold for robbery with a dangerous weapon but also the threat resulting from such possession, whether real or merely implied. As we noted in *State v. Williams*, there is a presumption that (1) a defendant has used a firearm or other dangerous weapon when he commits a robbery by the use or threatened use of an implement which *appears to be* a firearm or other dangerous weapon, and (2) such conduct endangered or threated the victim's life. 335 N.C. 518, 520-21, 438 S.E.2d 727, 728 (1994); *see also State v. Thompson*, 297 N.C. 285, 288-89, 254 S.E.2d 526, 528 (1979). The presumption may be rebutted with a showing of "some evidence" that the victim was not endangered or threatened, at which point a permissive inference survives. *Williams*, 335 N.C. at 521, 438 S.E.2d at 729 (emphasis omitted) (quoting *State v. White*, 300 N.C. 494, 507, 268 S.E.2d 481, 489 (1980)).

Our case law addressing the purpose of indictments is both long-standing and clear. As the majority opinion correctly notes, and thoroughly discusses, the fundamental purpose of an indictment is to place a criminal defendant on notice of the charges being brought against him in order to allow him to prepare an adequate defense. In short, the indictment notifies defendant of the charge against him; the jury determines if the evidence is adequate to support the charge. The information provided in the indictment—including the reference to section 14-87—clearly was sufficient to place defendant on notice that he was being tried for robbery with a dangerous weapon and that the gravamen of his offense was the bank employee's reasonable apprehension based upon the note he showed her stating that he was armed.

The majority cites our previous decision in *State v. Palmer* for the proposition that an indictment alleging the use of a dangerous weapon must "name the weapon." *Palmer*, 293 N.C. 633, 639, 239 S.E.2d 406, 411 (1977). *Palmer* does require an indictment for assault with a deadly weapon to identify a particular weapon; however, I am troubled by the analytical framework set forth in *Palmer* in that it appears to be inconsistent with the long-standing precedents of this Court and places significant reliance upon a case that depended in large part on a legal treatise for the foundation of its legal analysis. *See id.* at 639-40, 239 S.E.2d at 410-11.

*Palmer* actually concerned the sufficiency of an indictment for assault with a deadly weapon—a wholly different statute than the one at issue here. Therefore, *Palmer*'s utility in analyzing this case is of limited value. Moreover, there are three additional reasons *Palmer* should not guide our inquiry in this case. First, *Palmer* stated that indictments for crimes involving the use of a deadly weapon must "name the weapon," 293 N.C. at 639, 239 S.E.2d at 411, but, to the extent that this rule applied to statutes other than the one at issue in *Palmer*, that requirement was dictum. In addition, *Palmer* based its rule on a case that relied substantially on an entry from *Corpus Juris Secundum* (C.J.S.). *See id.* at 639, 239 S.E.2d at 410-11 (quoting *State v. Wiggs*, 269 N.C. 507, 513, 153 S.E.2d 84, 89 (1967)). But legal treatise entries are not binding authority on this Court—nor should they be—so the source of *Palmer*'s rule is troubling. Finally, a review of the pertinent C.J.S. entry quoted in *Palmer* fails to support the rule that *Palmer* set forth. That C.J.S. entry suggests only that an indictment must *either* (1) name the weapon (if its dangerous or deadly nature is obvious), (2) assert that a dangerous or deadly weapon was used, *or* (3) state enough facts to show that the weapon was deadly or dangerous. For all these reasons, we should not extend *Palmer*'s dictum to cover the statute at issue here.

Because *Palmer* is inconsistent with *Williams* and its forebears and progeny, however, *Palmer* has erroneously engrafted a requirement not included within the plain meaning of the words of the assault with a deadly weapon statute. Therefore,

I cannot agree with the majority's determination that it is appropriate to engraft that same requirement on the statute at issue here—namely, robbery with a dangerous weapon—because the plain meaning of *that* statute does not include the requirement.

Simply considering the statutory requirements for a conviction for robbery with a dangerous weapon, I find it impossible to conclude that the majority opinion has reached the correct conclusion in this case. In addition, in practice the majority's holding will place a high burden on law enforcement and prosecutors who prepare indictments to ensure that the dangerous weapon actually utilized during the robbery has been located. This seems to be a quantum shift in the jurisprudence of both this Court and our Court of Appeals.[1] According to our current precedents, a serious crime has been committed, but the majority's analysis will make it far more difficult to prosecute these types of offenses in the absence of the actual weapon utilized in the commission of a crime.

---

[1] *See, e.g., State v. Waters*, ___ N.C. App. ___, 799 S.E.2d 287, 2017 WL 2118718, at *4 (2017) (unpublished) (holding that a defendant's threat of possessing a bomb, which provoked victim's reasonable belief in the veracity of that threat, was sufficient to overcome the defendant's motion to dismiss a charge of robbery with a dangerous weapon even though police failed to "discover a bomb, evidence of a bomb, or any bomb-making materials"); *State v. Jarrett*, 167 N.C. App. 336, 337, 341, 607 S.E.2d 661, 662, 664 (2004) (holding no error in the defendant's trial and conviction for robbery with a dangerous weapon even though "[a] gun was not found on defendant's body nor in the house from which [law enforcement] saw defendant exit"), *cert. denied*, 359 N.C. 324, 611 S.E.2d 840 (2005); *State v. Coatney*, 164 N.C. App. 599, 596 S.E.2d 472, 2004 WL 1191779, at *1, *3 (2004) (unpublished) (concluding that, on a charge of robbery with a dangerous weapon, "the evidence here entitled the State to a mandatory presumption that defendant used a firearm or dangerous weapon and endangered or threatened the victim's life," while noting that police did not recover a gun).

*JACKSON, J., dissenting*

For the foregoing reasons, I dissent.

Chief Justice MARTIN and Justice NEWBY join in this dissenting opinion.