STATE OF NORTH CAROLINA v. CURTIS DOWNING

No. 161PA84

(Filed 27 February 1985)

**Larceny § 7.3— ownership of stolen property—fatal variance**

> There was a fatal variance between an indictment charging larceny of property from the owner of a building and evidence that the stolen property belonged to the building owner's daughter who had a business in the building where there was no evidence that the building owner was the owner, possessor or bailee of or had a special property interest in the stolen items relating to the business owned by her daughter.

ON petition for discretionary review from a decision of the Court of Appeals, reported at 66 N.C. App. 686, 311 S.E. 2d 702, finding no error in trial before *Bruce, J.,* at the 18 October 1982 Criminal Session of Superior Court, WASHINGTON County.

Defendant was convicted of felonious breaking or entering, felonious larceny, and obstructing an officer for which he received two consecutive ten year sentences and a two year sentence respectively.[1]

*Lacy H. Thornburg, Attorney General, and Jane P. Gray, Assistant Attorney General, for the State.*

*Adam Stein, Appellate Defender, for defendant-appellant.*

BRANCH, Chief Justice.

Defendant challenges his conviction of felonious larceny based upon two separate theories: (1) that double jeopardy principles prohibit conviction and sentencing for both felonious break-

---

1. The Court of Appeals found that the imposition of a two year sentence for obstructing an officer exceeded the statutory maximum and remanded that case for resentencing.

ing or entering and felonious larceny; and (2) that as the result of a fatal variance between the indictment and the evidence as to the ownership of the stolen property, the larceny conviction cannot be sustained. The record supports defendant's position that there is a fatal variance between the indictment and proof as to the ownership of the stolen property and we reverse on this issue. We therefore do not reach the double jeopardy argument.

The State's evidence tends to show that during the early morning hours of 13 August 1982 defendant was observed by two police officers in the vicinity of the East Haven Food Mart in Plymouth, North Carolina. Defendant had been convicted of breaking or entering and larceny on two prior occasions and one of the officers testified that "[w]hen we see [the defendant] out walking, we usually keep an eye on him. I mean we'll patrol in that general area." The officers abandoned their surveillance at approximately 5:00 a.m. when defendant appeared to have gone home. Shortly afterwards one of the officers discovered that the East Haven Food Mart had been broken into.

Mary Ruska testified that her mother, Helen Atamanchuck, owns the East Haven Food Mart store building. Ms. Ruska owns the business. Upon her arrival at the Food Mart on 13 August, Ms. Ruska examined the premises and determined that the following items were missing: two television sets, a radio, about six dollars in change from the cash register and some checks and business papers.

The officers located defendant asleep in the back seat of an abandoned vehicle parked in the backyard of his residence. Inside the vehicle the officers found a tire tool, three cigarette lighters, cigarettes, three bottles of wine, a pack of Dentyne gum and a radio. The officers also found $5.93 in defendant's pocket. Ms. Ruska identified the radio as the one missing from her store. She also identified the Dentyne gum and stated that ordinarily the supplier's identifying tag would have been removed had the gum been sold. Following a search of the area surrounding the store, the television sets, the checks and business papers, and three additional bottles of wine were recovered. There were empty spaces in the dairy case where the wine had been stored.

Defendant testified on his own behalf and denied breaking into the food mart or stealing the property. He stated that after

drinking all evening, he rode home on his bicycle. As he approached the dumpster next to the food mart he fell off his bicycle. There he found a radio and a pack of gum. At the time of his arrest, however, defendant stated that he had bought the radio.

We turn to defendant's contention that there is a fatal variance between the indictment and the evidence as to the ownership of the stolen property. In this regard, Mary Ruska testified that although her mother, Helen Atamanchuck, owned the building, she (Mary Ruska) owned the business known as the East Haven Food Mart. The indictment alleges, inter alia, that defendant "unlawfully and wilfully did feloniously steal, take, and carry away two (2) television sets, one (1) clock radio, $5.93 in coins, one (1) carton of cigarettes, two (2) packages of cigarettes, three (3) bottles of Richard's Wild Irish Rose wine, and one (1) package of Dentine [sic] gum *the personal property of Helen Atamanchuk* [sic]." (Emphasis added.)

In *State v. Eppley*, 282 N.C. 249, 259, 192 S.E. 2d 441, 448 (1972), we stated that "[t]he allegation of ownership of the property described in a bill of indictment for larceny is material. If the proof shows that the article stolen was not the property of the person alleged in the indictment to be the owner of it, the variance is fatal and a motion for judgment of nonsuit should be allowed." We have also held that mere ownership of the premises from which an item of property is stolen does not constitute proof of ownership of the stolen property. *State v. Law*, 227 N.C. 103, 40 S.E. 2d 699 (1946). To be sufficient, an indictment for larceny must allege the owner or person in lawful possession of the stolen property. *State v. McKoy*, 265 N.C. 380, 144 S.E. 2d 46 (1965). Should an indictment attribute ownership of the stolen property to the owner of the premises, the evidence at trial must establish that the person named in the indictment is either the owner, the bailee or has an otherwise special interest in the property stolen. *See State v. Greene*, 289 N.C. 578, 223 S.E. 2d 365 (1976); *State v. Eppley*, 282 N.C. 249, 192 S.E. 2d 441 (1972); *State v. Smith*, 266 N.C. 747, 147 S.E. 2d 165 (1966); *State v. Law*, 227 N.C. 103, 40 S.E. 2d 699 (1946).

In *Law* the larceny indictment alleged that a stolen automobile was the property of the City of Winston-Salem. The

evidence at trial disclosed that the automobile had been stolen from a city-owned parking lot after being seized by a police officer. We noted that the officer was in custody of the automobile when it was stolen and that the indictment failed to describe the automobile sufficiently to distinguish it from others on the premises. Thus, the mere fact that this property was stolen from premises owned by the city was insufficient, without more, to establish the city's ownership, possession, or special interest in the automobile.

In *Eppley* the indictment charged the defendant with larceny of two shotguns belonging to James Ernest Carriker. At trial James Carriker identified a shotgun as an article taken from his home, but testified that the gun was the property of his father. We noted an absence of evidence that James Carriker was a bailee of the shotgun or had any other property interest therein and therefore reversed defendant's larceny conviction on this charge.

The State argues that *Law* is not applicable here because the basis of that decision was the insufficiency of the description of the automobile in the bill of indictment. That case, however, does point out the difficulty encountered when an indictment for larceny attributes ownership of the stolen property to the mere ownership of the premises wherein the property is located. In such cases it is incumbent upon the State, following evidence that negates actual ownership or possession to one named in the indictment, to produce evidence of bailment or other special property interest.

Likewise, we reject the State's argument that *Eppley* is distinguishable and therefore not controlling. In fact, it is the distinction between the facts in *Eppley* and those in the present case which further dictates our resolution of this issue in defendant's favor. The State points out that *Eppley* involved a theft from a residential dwelling whereas in this case the property was stolen from a business establishment. The case for bailment or other special property interest is more compelling where property is stolen from a residence. *See State v. Greene*, 289 N.C. 578, 223 S.E. 2d 365 (1976); *State v. Smith*, 266 N.C. 747, 147 S.E. 2d 165 (1966); *State v. Robinette*, 33 N.C. App. 42, 234 S.E. 2d 28 (1977). In contrast, it is less likely, absent proof to the contrary,

that the owner of a building in which another conducts business would have a special property interest in items relating to that business. Here there was no evidence at trial that Helen Ataman-chuck, the owner of the business premises and to whom owner-ship of the stolen property was attributed, was the owner, possessor or bailee of or had a special property interest in the stolen items relating to the business owned by Mary Ruska. The larceny conviction must therefore be reversed.[2] The case is remanded to the Court of Appeals for further remand to Superior Court, Washington County with directions to vacate the judgment in the larceny conviction. Defendant's conviction on the breaking or entering charge is not affected by this ruling.

No. 82CRS1265—Breaking or entering—affirmed.

No. 82CRS1265—Felonious larceny—reversed and remanded.

---

2. The district attorney, if he so elects, may present another bill of indictment correctly alleging ownership of the property. *State v. Stinson*, 263 N.C. 283, 139 S.E. 2d 558 (1965). *See State v. Simpson*, 302 N.C. 613, 276 S.E. 2d 361 (1981); *State v. Watson*, 272 N.C. 526, 158 S.E. 2d 334 (1968); *State v. Law*, 227 N.C. 103, 40 S.E. 2d 699 (1946).