CALABRIA, Judge.
Barney Kouyen Huang ("defendant") was charged with misdemeanor larceny for theft of a vacuum cleaner hose from Sam's Club on South Saunders Street in Raleigh, North Carolina. Alfred Anthony Cervini ("Cervini"), a loss prevention specialist for Sam's Club, testified that he was assigned to the South Saunders Street store on 22 December 2002 for the purpose of re-training the store's loss prevention officer. While patrolling the store, Cervini observed defendant remove a vacuum cleaner hose from an aisle display and conceal the hose underneath his shirt and jacket, stuffing one end of the hose down into his pants. Cervini followed defendant until he joined his wife, Lingy Huang ("Huang"), at the store's bakerydepartment. Defendant and Huang proceeded to a checkout line, where Huang purchased three food items. On their way out of the store, they placed some empty boxes in the shopping cart and exited separately. Cervini followed defendant outside the store and confronted him about the vacuum hose. In response to defendant's repeated denials, Cervini tapped on a protuberance above defendant's shoulder created by the end of the hose and asked defendant to follow him back into the store.
When they reached the manager's office, Cervini asked defendant again about the vacuum hose. Defendant unzipped his jacket, removed the hose from beneath his shirt, and threw it to the floor, striking Cervini on the legs. When defendant refused to produce identification, Cervini called the police. While waiting for the police to arrive, defendant "kept getting up saying he had to leave" and walking toward the office door. When Cervini stood up to stop him, defendant "would stare [Cervini] down" before returning to his seat. Defendant then placed his hands inside his jacket as though to tuck in his shirt. Cervini asked defendant "to keep your hands where I can see them[,]" for safety reasons. Defendant then put his right hand in his jacket pocket. After twice complying with Cervini's requests to keep his hands visible, defendant put his right hand back into his pocket and "started rocking back and forth" and "staring straight ahead," ignoring Cervini. When defendant failed to heed an additional request to remove his hand from his pocket, Cervini grabbed his wrist. Then defendant pushed Cervini into Terry Stratton ("Stratton") a front-end store manager, who was also in the office. Cervini announced he was going to handcuff defendant and grasped him by the wrist a second time. Defendant again pushed Cervini away, and then he backed into a corner of the room. When the police arrived, Cervini heard one of the officers ask defendant why he did it, and defendant said "because he bought a defective vacuum cleaner from Sam's Club."
Stratton testified that she was working as the front-end manager of the South Saunder's Street Sam's Club store on 22 December 2002, when Cervini notified her that he was preparing to stop a suspected shoplifter. Stratton followed Cervini outside and watched him ask defendant "at least twice" about the hose. When defendant insisted he had not taken anything, Cervini tapped him on the shoulder "as if to point out to him that he really had something there." Stratton accompanied the two men to her office, where she witnessed the following:
We came in, we shut the door. And Mr. Cervini had asked [defendant] for the merchandise. He said he didn't have any. [Cervini] did ask him for [it] a couple of times, then finally [defendant] pulled this hose out from under his jacket, he had his jacket on. [Cervini] asked him for identification. He didn't have any. And he started mumbling that we can replace it. He didn't need it. He needed to go, needed to go get some money, needed to go get his wife. . . .
Stratton corroborated Cervini's account that defendant was "very agitated, wanted to leave[,]" and "kept putting his hands in his pockets" while they waited for the police. After asking defendant three or four times to keep his hands in view, Cervini grabbed himby the wrist in an attempt to handcuff him. Stratton left the office when the police arrived.
Raleigh Police Officer Sam Keeler ("Keeler") responded to the call from Sam's Club and found defendant in the manager's office. Keeler noticed that defendant's pants were unzipped. Defendant told Keeler that he had no identification and ignored Keeler's instructions to keep his hands out of his pockets. After patting down defendant's clothing, Keeler asked defendant what had happened. Defendant told Keeler "that he bought a vacuum cleaner and the hose was defective, and he went ahead and was replacing it." Defendant did not appear to be injured and was not carrying a box. When Huang arrived in her car to pick up defendant, however, Keeler noticed boxes in her car.
Defendant testified in his own defense, characterizing the State's evidence as "all [a] bunch of lies[.]" He denied concealing the hose beneath his clothing and claimed that the hose in question would not fit his vacuum cleaner. As defendant and Huang were leaving the store, she asked him to pick up two of the empty cardboard boxes which were provided for customers at the checkout counter. Defendant placed one of the boxes in Huang's cart and carried the second one with him. While standing by the exit door waiting for his wife to pick him up in her car, defendant heard a "little noise" inside the box. He opened the box and discovered a hose. At this moment, Cervini approached defendant and ordered him into the store's office. Defendant tucked the hose under his arm and carried the box with him. Once in the office,defendant placed the box on a chair, handed Cervini the hose, and explained that he found the hose in the box. Cervini replied that he had watched defendant on a store surveillance camera open a box and take the hose. Defendant asked Cervini to go find the open box. Cervini went to look for the box and was gone "a long time." When he returned, Cervini was "very irritated" and tried to handcuff defendant. Cervini scratched defendant's wrists with the edge of the handcuffs, drove his knee into defendant's bad knee, twisted defendant's arm "even harder[,]" and said defendant would "suffer more" if he did not cooperate. When the police arrived, defendant's wife provided them with his social security number. Police confirmed defendant's identity and rushed him out of the store. Defendant took the box with him as evidence. As a result of his encounter with Cervini, defendant had injuries: bruised and scratched wrists, a sore shoulder for almost a month, and an injured knee for which he sought medical treatment.
Huang confirmed that defendant picked up two empty boxes as they were exiting the store. Since she could not see over the boxes stacked in her cart, defendant waited by the store exit with one box while she retrieved the car. Unable to locate her husband when she returned, Huang circled the parking lot two or three times before going back into the store. Officer Keeler brought her to the office, where Huang saw a cardboard box resting next to a chair. Defendant's wrists were "kind of bloody," and he had blood on his shirt.
I. Amendment of the Citation
On appeal, defendant first argues that the trial court erred in allowing the State to amend the citation at the beginning of trial to change the name of the property's owner from "Sam's Club" to "Sam's Club, Incorporated[.]" The transcript reflects the following exchange regarding the State's motion:
[PROSECUTOR]: Your Honor, State would like to amend this citation in this matter just to include incorporated after Sam's Club.
THE COURT: Any objection?
[DEFENSE COUNSEL]: I have no objection.
. . .
THE COURT: So it would be the personal property of Sam's Club, Incorporated?
[PROSECUTOR]: Yes, Your Honor.
THE COURT: Motion to amend is allowed.
Under N.C. Gen. Stat. § 15A-922(f) (2003), "[a] statement of charges, criminal summons, warrant for arrest, citation or magistrate's order may be amended at any time prior to or after final judgment when the amendment does not change the nature of the offense charged." In State v. Reeves, 62 N.C. App. 219, 302 S.E.2d 658 (1983), we held that "[a]mending the arrest warrant at trial to change the owner of the property taken does not change the nature of the offense charged. After the amendment, defendant was tried for the same offense that is alleged in the warrant." Id. at 224, 302 S.E.2d at 661. Although here defendant was charged by citation rather than by warrant, the statute at issue makes no distinction between an arrest warrant and a citation. Defendant's case is indistinguishable from Reeves, and his assignment of error isoverruled.
II. Denial of Motion to Dismiss
Defendant next argues that the trial court erred in denying his motion to dismiss because there was no evidence that the vacuum hose was owned by an entity named "Sam's Club, Incorporated" as alleged in the amended citation. Specifically, he contends, "The only proof was of ownership by 'Sam's Club', not a legal entity capable of owning property."
"[U]pon a motion for nonsuit in a criminal case, the evidence must be taken in a light most favorable to the State and the Court must give the State the benefit of every reasonable inference which arises from the evidence." State v. Jetton, 1 N.C. App. 567, 569, 162 S.E.2d 102, 104 (1968). In order to support a charge of larceny, the State must prove that the defendant "(1) took the property of another; (2) carried it away; (3) without the owner's consent, and (4) with the intent to deprive the owner of the property permanently." State v. Perry, 305 N.C. 225, 235, 287 S.E.2d 810, 816 (1982) (footnote 7). Moreover, "the evidence at trial must establish that the person named in the indictment is either the owner, the bailee, or has an otherwise special interest in the property stolen." State v. Downing, 313 N.C. 164, 166, 326 S.E.2d 256, 258 (1985).
Defendant does not contest the sufficiency of the evidence that he took the vacuum hose from the Sam's Club store without permission and with the requisite intent. Instead, he cites a variance between the owner named in the citation, "Sam's Club,Incorporated[,]" and the witnesses' references to "Sam's Club" and "Sam's[.]" He notes that neither Cervini nor Stratton expressly identified their employer as a corporation.
This Court addressed a similar argument in State v. Daye, 45 N.C. App. 316, 262 S.E.2d 704 (1980) and concluded that the failure of State's witnesses to identify the retail store as a corporation as alleged in the indictment did not constitute a fatal variance:
In the case sub judice, the indictment alleged that J. Riggings, Inc. owned the two suits. The proof was that they were owned by "J. Riggings, a man's retailing establishment," "J. Riggings store" and "J. Riggings." The question posed by this appeal is whether this proof is so at variance with the indictment that the case should be dismissed. We hold that it is not. The evidence was that the suits were owned by the entity named in the indictment. We hold that it was not a fatal variance that no one testified J. Riggings was a corporation.
Id. at 317-18, 262 S.E.2d at 705.
The evidence established that defendant stole merchandise on display for sale at a Sam's Club retail store. There was no evidence that the hose was owned by an individual or entity other than the owner named in the citation. In accordance with Daye, we find no fatal variance between the allegations in the citation and the State's proof at trial. To the extent defendant challenges Sam's Club's capacity to own property, we further find the circumstances support a reasonable inference that Sam's Club had possession and control of the merchandise on display in its retail store.
III. Ineffective Assistance of Counsel
In his remaining argument on appeal, defendant asserts his counsel rendered ineffective assistance by failing to place into evidence (1) Defendant's Exhibit D-8, a photograph purportedly reflecting the injuries to defendant's wrists inflicted by Cervini and (2) Defendant's Exhibit E, the shirt defendant was wearing at the time of the incident, allegedly stained with blood from his injuries. Defendant suggests that these exhibits would have bolstered the credibility of his testimony while discrediting the State's witnesses.
To sustain a claim of ineffective assistance of counsel, defendant must show both that his counsel's performance fell below an objective standard of reasonableness and that this deficiency had a probable impact on the outcome at trial. State v. Braswell, 312 N.C. 553, 563, 324 S.E.2d 241, 249 (1985). "[I]f a reviewing court can determine at the outset that there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different, then the court need not determine whether counsel's performance was actually deficient." Id. We have examined the photographic exhibit in question, which portrays two small marks or scratches on the subject's right wrist and a single, smaller mark on the left wrist. We find no reasonable probability that the admission of this image to illustrate defendant's testimony would have affected the outcome at trial. To the extent defendant faults his trial counsel for failing to introduce the shirt into evidence, he has failed to include this exhibit as part of the record on appeal. See N.C. R.App. P. 9(a) (2004). "Our review is limited to what is presented in the record on appeal." State v. Lyszaj, 314 N.C. 256, 260, 333 S.E.2d 288, 292 (1985). Accordingly, we find no merit to defendant's ineffective assistance claims.
The record on appeal contains an additional assignment of error not addressed by defendant in his brief to this Court. Pursuant to N.C. R. App. P. 28(b)(6) (2004), we deem it abandoned.
No error.
Judges TIMMONS-GOODSON and LEVINSON concur.
Report per Rule 30(e).