ELMORE, Judge.
 

 *245
 
 Defendant Thomas Everrette, Jr. appeals from judgments entered after a jury convicted him of three counts of obtaining property by false pretenses under
 
 N.C. Gen. Stat. § 14-100
 
 . This case presents the issue of whether obtaining-property-by-false-pretenses indictments charging a defendant with obtaining an unspecified amount of "credit" secured through the issuance of an unidentified "loan" or "credit card," is a sufficiently particular description of what he allegedly obtained, such that it conferred jurisdiction upon the trial court to enter judgments against him. Because we conclude this vague language fails to describe what was obtained with sufficient particularity, as required to enable a defendant adequately to prepare a defense, we hold the indictments failed to vest the trial court with jurisdiction. Accordingly, we vacate defendant's convictions and arrest the resulting judgments.
 

 I. Background
 

 In June 2013, defendant joined Weyco Community Credit Union ("Weyco"). On 25 June, defendant applied for a collateralized loan from Weyco. As part of the loan application process, defendant completed a "verification of employment" form indicating that Bail American Surety, LLC ("Bail American") was his employer, and listing its physical address and telephone number. On 27 June, defendant applied for a secured vehicle loan of $14,399.00 to buy a Suzuki motorcycle ("Motorcycle Loan"), as well as a credit card with a credit limit of $2,000.00 ("Credit Card"). These applications listed Bail American as defendant's employer and were approved by a Weyco loan officer that same day. On 3 July, defendant applied for and obtained another secured vehicle loan of $56,976.00 to buy a Dodge truck ("Truck Loan"). This application did not list defendant's employment information.
 

 On 31 July, defendant submitted his first payment on the Motorcycle Loan via a $281.95 check draft, which was later returned for insufficient funds. On 2 August, defendant submitted his first payment of $891.27 on the Truck Loan. On 30 August, defendant made his second payment on the Motorcycle Loan. But because defendant had defaulted on his first Motorcycle Loan payment, and since the Motorcycle Loan and
 
 *246
 
 Truck Loan (collectively, the "Vehicle Loans") were cross-collateralized, defendant was in default on both loans.
 

 Sometime after Weyco issued defendant the Vehicle Loans and Credit Card, Bank Branch and Trust's ("BB&T") fraud department alerted a Weyco representative that an unusual transaction had gone through Weyco's BB&T checking account. BB&T faxed Weyco a copy of the check from that transaction, and defendant's name was typewritten on the upper-left corner of the check. BB&T's alert prompted a Weyco loan officer supervisor, Gay Roberson, to investigate.
 

 Roberson attempted to verify defendant's employment information by calling the telephone number listed for Bail American on defendant's Motorcycle Loan and Credit Card applications. The number returned a different company. After Roberson's internet search for the company name proved fruitless, she discovered the physical address listed for Bail American belonged to a different business. Roberson eventually contacted law enforcement.
 

 Detective Sergeant Gene Bullock of the Williamston Police Department searched the North Carolina Secretary of State's records to locate the entity, Bail American, and was unsuccessful. But Sergeant Bullock found records of an entity named "Everette's Bail Bonding, Inc.," formed in 2000 and dissolved in 2005, as well as an entity named "Thomas Everette, Jr., LLC," formed in 2011 and dissolved in 2014, at some point after Weyco had issued defendant the Vehicle Loans and Credit Card. Defendant was later arrested and charged.
 

 On 30 March 2015, a grand jury of Martin County indicted defendant for three counts of obtaining property by false pretenses under
 
 N.C. Gen. Stat. § 14-100
 
 . The indictment
 
 *171
 
 for the first count, arising from Weyco's issuance of the Credit Card, charged that defendant "obtain[ed] credit, from Weyco" and alleged that "this property was obtained by means of giving false employment information on an application for a credit card so as to qualify for said credit care [sic] which was issued to him based upon the false information." The indictments for the second and third counts, arising from the Vehicle Loans, were identical save for the offense dates, and charged that defendant "obtain[ed] credit, from Weyco" and that "this property was obtained by means of giving false information on an application for a loan so as to qualify for said loan which loan was made to defendant."
 

 At trial, Roberson testified that BB&T's potential fraud alert prompted her to investigate defendant's employment. Over defendant's objection, the State admitted into evidence the fax from BB&T, a screenshot of
 
 *247
 
 the image of the check containing defendant's name typewritten in its upper-left corner. Handwritten under the check's image was "BB&T Ck fraud." At the close of the State's evidence, defendant unsuccessfully moved to dismiss the charges. He argued the State failed to present sufficient evidence he misrepresented his employment information, in light of the evidence he elicited on cross-examination indicating that the two entities he previously owned, Everette's Bail Bonding, Inc. and Thomas Everette, Jr., LLC, did business as Bail American.
 

 Defendant represented himself
 
 pro se
 
 with standby counsel. He called his brother, Mr. James Joyner, and asked him about defendant's prior work history as a bail bondsman and his efforts to make timely loan payments. Joyner testified that defendant had worked as a bail bondsman for most of his life, that defendant used "Bail American" or "Bail American Bail Bondsman" on business cards and advertisements, and that Joyner helped defendant make loan payments when needed.
 

 On cross-examination, the State asked Joyner how long he knew defendant to be a bail bondsman; Joyner replied: "[B]asically, all his adult life." The State asked whether defendant was a licensed bail bondsman; Joyner replied: "[A]s far as I know." Then the State asked, over defendant's objection, whether Joyner knew defendant had previously been convicted for impersonating a bail bondsman; Joyner replied: "Did I know that he was impersonating a bail bondsman? No. I don't know about that impersonating." The State inquired no further. At the close of his evidence, defendant renewed his motions to dismiss the charges for insufficient evidence, which were again denied.
 

 On 16 August 2016, the jury found defendant guilty on all three charges of obtaining property by false pretenses. The trial court entered three judgments against defendant, imposing three consecutive active sentences of fifteen to twenty-seven months in prison. Defendant appeals.
 

 II. Alleged Errors
 

 On appeal, defendant contends the trial court (1) lacked jurisdiction to enter judgments against him because the indictments were facially invalid, arguing they failed to specify the property obtained with reasonable certainty. Defendant also contends the trial court erred by (2) denying his motion to dismiss the third charge arising from the Truck Loan application due to a fatal variance between that indictment and the trial evidence. Specifically, he argues that indictment alleged he misrepresented his employment information on the Truck Loan application, when trial evidence showed the application contained no employment information. Defendant also asserts the trial court erred by (3) admitting
 
 *248
 
 over objection the State's question to Joyner about his knowledge of defendant's prior impersonating-a-bail-bondsman conviction, and (4) admitting allegedly inadmissible hearsay evidence arising from the suspicious BB&T transaction that suggested defendant participated in an unrelated bank fraud. Because we hold the indictments were insufficient and therefore warrant vacating defendant's convictions and arresting the resulting judgments, resolving defendant's first alleged error disposes of his entire appeal, and we thus decline to address his remaining arguments.
 
 See, e.g.
 
 ,
 
 State v. Downing
 
 ,
 
 313 N.C. 164
 
 , 165,
 
 326 S.E.2d 256
 
 , 257 (1985) (vacating larceny conviction for fatal
 
 *172
 
 variance between indictment and trial evidence and, therefore, declining to address the defendant's double-jeopardy argument related to the larceny conviction).
 

 III. Sufficiency of Indictments
 

 A. Arguments
 

 Defendant contends the trial court lacked jurisdiction to enter judgments against him because the indictments were facially invalid on the ground that they failed to describe with reasonable certainty the things he allegedly obtained. He argues the Vehicle Loan application indictments, which merely described the property obtained as "a loan" and "a loan," but failed to specify what was loaned (e.g. money or another valuable), or the property he obtained with those loans, were insufficient to sustain the charges. He also contends the Credit Card application indictment, which merely described the property as "a credit card," but failed to identify that card, its value, or what property he obtained using that card, similarly was insufficient to sustain the charge. Defendant relies primarily on our Supreme Court's decisions in
 
 State v. Smith
 
 ,
 
 219 N.C. 400
 
 ,
 
 14 S.E.2d 36
 
 (1941), and
 
 State v. Jones
 
 ,
 
 367 N.C. 299
 
 ,
 
 758 S.E.2d 345
 
 (2014), to support his argument.
 

 The State retorts that each indictment was valid. It argues these indictments should not be quashed based on such technicalities, and because the indictments describe the dates of the offenses, the name of the victim, and the things obtained by the terms generally used to describe them (i.e. credit card and loan), the indictments sufficiently apprised defendant of the charges against him and were specific enough to allow him to prepare a defense. The State further contends that defendant's reliance on
 
 Smith
 
 and
 
 Jones
 
 is misplaced in light of this Court's decision in
 
 State v. Ricks
 
 , --- N.C. App. ----,
 
 781 S.E.2d 637
 
 (2016).
 

 B. Discussion
 

 "[A] valid indictment is necessary to confer jurisdiction upon the trial court."
 
 State v. Murrell
 
 , --- N.C. ----, ----,
 
 804 S.E.2d 504
 
 , 508 (2017)
 

 *249
 
 (citing
 
 State v. Morgan
 
 ,
 
 226 N.C. 414
 
 , 415,
 
 38 S.E.2d 166
 
 , 167 (1946) ;
 
 State v. Snyder
 
 ,
 
 343 N.C. 61
 
 , 65,
 
 468 S.E.2d 221
 
 , 224 (1996) ). "A defendant can challenge the facial validity of an indictment at any time, and a conviction based on an invalid indictment must be vacated."
 
 State v. Campbell
 
 ,
 
 368 N.C. 83
 
 , 86,
 
 772 S.E.2d 440
 
 , 443 (2015) (citing
 
 McClure v. State
 
 ,
 
 267 N.C. 212
 
 , 215,
 
 148 S.E.2d 15
 
 , 17-18 (1966) ). We review
 
 de novo
 
 the sufficiency of an indictment to sustain a conviction.
 
 See, e.g.
 
 ,
 
 State v. Barker
 
 ,
 
 240 N.C. App. 224
 
 , 228,
 
 770 S.E.2d 142
 
 , 146 (2015) (citing
 
 State v. McKoy
 
 ,
 
 196 N.C. App. 650
 
 , 652,
 
 675 S.E.2d 406
 
 , 409 (2009) ).
 

 "An indictment must contain 'a plain and concise factual statement in each count which, ... asserts facts supporting every element of a criminal offense ... with sufficient precision clearly to apprise the defendant ... of the conduct which is the subject of the accusation.' "
 
 State v. Jones
 
 ,
 
 367 N.C. 299
 
 , 306,
 
 758 S.E.2d 345
 
 , 350-51 (2014) (quoting
 
 State v. Cronin
 
 ,
 
 299 N.C. 229
 
 , 234,
 
 262 S.E.2d 277
 
 , 281 (1980) ). Specificity in an indictment is required to ensure it:
 

 (1) "apprises the defendant of the charge against him with enough certainty to enable him to prepare his defense"; (2) "protect[s] him from subsequent prosecution for the same offense"; and (3) "enable[s] the court to know what judgment to pronounce in the event of conviction."
 

 Murrell
 
 at ----,
 
 804 S.E.2d at 508
 
 (quoting
 
 State v. Coker
 
 ,
 
 312 N.C. 432
 
 , 434-35,
 
 323 S.E.2d 343
 
 , 346 (1984) ).
 

 The elements of the crime of obtaining property by false pretenses follow:
 

 (1) "knowingly and designedly by means of any kind of false pretense"; (2) "obtain[ing] or attempt[ing] to obtain from any person ... any money, goods, property, services, chose in action, or other thing of value"; (3) "with intent to cheat or defraud any person of such money, goods, property, services, chose in action or other thing of value."
 

 Jones
 
 ,
 
 367 N.C. at 307
 
 ,
 
 758 S.E.2d at 351
 
 (quoting
 
 N.C. Gen. Stat. § 14-100
 
 (a) (2013) ).
 

 An indictment is generally sufficient when the charge tracks the governing statute.
 
 State v. Palmer
 
 ,
 
 293 N.C. 633
 
 , 637-38,
 
 239 S.E.2d 406
 
 , 409-10 (1977). But where
 
 *173
 
 a statute uses generic terms, the indictment must descend to particulars.
 
 See, e.g.
 
 ,
 
 Jones
 
 ,
 
 367 N.C. at 307-08
 
 ,
 
 758 S.E.2d at 351
 
 . Thus, in an obtaining-property-by-false-pretenses
 
 *250
 
 indictment, "the thing obtained ... must be described with reasonable certainty, and by the name or term usually employed to describe it."
 
 Id.
 
 at 307,
 
 758 S.E.2d at
 
 351 (citing
 
 State v. Gibson
 
 ,
 
 169 N.C. 318
 
 , 320,
 
 85 S.E. 7
 
 , 8 (1915) ). An indictment "simply describing the property obtained as 'money,'
 
 State v. Reese
 
 ,
 
 83 N.C. 637
 
 , 640 (1880), or 'goods and things of value,'
 
 State v. Smith
 
 ,
 
 219 N.C. 400
 
 ,
 
 14 S.E.2d 36
 
 (1941), is insufficient to allege the crime of obtaining property by false pretenses."
 
 Jones
 
 ,
 
 367 N.C. at 307
 
 ,
 
 758 S.E.2d at 351
 
 . Nor is an indictment merely describing the property as "services."
 
 Id.
 
 at 307-08,
 
 758 S.E.2d at 351
 
 .
 

 In
 
 Jones
 
 , our Supreme Court was presented with an issue related to the sufficiency of obtaining-property-by-false-pretenses indictments and specifically addressed the adequacy of their descriptions of things allegedly obtained.
 
 367 N.C. at 306-07
 
 ,
 
 758 S.E.2d at 350-51
 
 . Despite those indictments identifying the offense dates, the victim, and the stolen credit card used to acquire the automobile services and parts the State sought to prove the defendant fraudulently obtained, our Supreme Court held those indictments invalid because their property description of " 'services' from Tire Kingdom and Maaco" was insufficiently particular.
 
 Id.
 
 at 307-08,
 
 758 S.E.2d at 351
 
 .
 

 Relying on authority from its prior decisions in
 
 Reese
 
 ,
 
 83 N.C. at 639-40
 
 (holding indictment insufficient where it alleged "money" was obtained but did not "describe[ it] at least by the amount, as for instance so many dollars and cents"), and
 
 Smith
 
 ,
 
 219 N.C. at 401-02
 
 ,
 
 14 S.E.2d at 36-37
 
 (holding indictment insufficient where it alleged "goods and things of value" were obtained but failed to specify that it was money or describe its amount), the
 
 Jones
 
 Court concluded that "[l]ike the terms 'money' or 'goods and things of value,' the term 'services' [did] not describe with reasonable certainty the property obtained by false pretenses."
 
 367 N.C. at 307-08
 
 ,
 
 758 S.E.2d at 351
 
 . The
 
 Jones
 
 Court reasoned further that " 'services' is not the name or term usually employed to adequately describe the tires, rims, wiper blades, tire and rim installation, wheel alignment, and break services Jones allegedly obtained from Tire Kingdom, or the paint materials and service, body supplies and labor, and 'sublet/towing' services Jones obtained from Maaco."
 
 Id.
 
 at 308,
 
 758 S.E.2d at 351
 
 .
 

 Here, the Vehicle Loan application indictments were identical save for the offense dates and alleged that defendant:
 

 unlawfully, willfully and feloniously did knowingly and designedly with the intent to cheat and defraud
 
 obtain credit
 
 , from Weyco Community Credit Union, by means
 
 *251
 
 of a false pretense which was calculated to deceive and did deceive. The false pretense consisted of the following:
 
 this property was obtained by means of giving false employment information on an application for a loan so to qualify for said loan which loan was made to defendant
 
 .
 

 (Emphasis added.) The Credit Card application indictment alleged that defendant:
 

 unlawfully, willfully and feloniously did knowingly and designedly with the intent to cheat and defraud
 
 obtain credit
 
 , from Weyco Community Credit Union, by means of a false pretense which was calculated to deceive and did deceive. The false pretense consisted of the following:
 
 this property was obtained by means of giving false employment information on an application for a credit card so to qualify for said credit care [sic] which was issued to him based upon the false information.
 

 (Emphasis added.)
 

 Applying
 
 Reese
 
 ,
 
 Smith
 
 , and
 
 Jones
 
 , we hold that indictments charging a defendant with obtaining "credit" of an unspecified amount, secured through two unidentified "loan[s]" and a "credit card" are too vague and uncertain to describe with reasonable certainty what was allegedly obtained, and thus are insufficient to charge the crime of obtaining property by false pretenses. "Credit" is a term less specific than money, and the principle that monetary value must at a minimum be described in an obtaining-property-by-false-pretenses indictment extends logically to our conclusion that credit value must also
 
 *174
 
 be described to provide more reasonable certainty of the thing allegedly obtained in order to enable a defendant adequately to mount a defense. Moreover, although the indictments alleged defendant obtained that credit through "loan[s]" and a "credit card," they lacked basic identifying information, such as the particular loans, their value, or what was loaned; the particular credit card, its value, or what was obtained using that credit card.
 

 Nonetheless, the State argues that the indictments here contain the requisite elements of
 
 N.C. Gen. Stat. § 14-100
 
 as defined by our Supreme Court in
 
 State v. Cronin
 
 ,
 
 299 N.C. 229
 
 , 242,
 
 262 S.E.2d 277
 
 , 286 (1980) ; that "[f]urther, the indictments specify the dates of the offenses and the victim of the alleged crimes (Weyco), as well as the things obtained by Defendant using the name or term usually employed to describe them (e.g., 'credit card' and 'loan')" and thus were sufficient to provide
 
 *252
 
 defendant with notice of the charges against him and were specific enough to allow him to prepare a defense; and that defendant's lack-of-specificity argument is foreclosed by this Court's decision in
 
 Ricks
 
 . We disagree.
 

 First, even if the indictments charged in broad terms the elements of
 
 N.C. Gen. Stat. § 14-100
 
 as defined in
 
 Cronin
 
 , this is no cure for their lack of particularity of the things allegedly obtained. Further, our Supreme Court in 2014 addressed the sufficiency of an obtaining-property-by-false-pretenses indictment and, as mentioned above, listed the elements of
 
 N.C. Gen. Stat. § 14-100
 
 (a) as follows:
 

 (1) "knowingly and designedly by means of any kind of false pretense"; (2) "obtain[ing] or attempt[ing] to obtain from any person ... any money, goods, property, services, chose in action, or other thing of value"; (3) "with intent to cheat or defraud any person of such money, goods, property, services, chose in action or other thing of value."
 

 Jones
 
 ,
 
 367 N.C. at 307
 
 ,
 
 758 S.E.2d at 351
 
 (quoting
 
 N.C. Gen. Stat. § 14-100
 
 (a) (2013) ). Thus, the State's reliance on our Supreme Court's 1980 description of these elements in
 
 Cronin
 
 is misplaced and, nonetheless, its argument is unconvincing. Indeed,
 
 Cronin
 
 illustrates a more sufficient indictment.
 

 In
 
 Cronin
 
 , the defendant "obtained a loan of $5,704.54 by representing to the bank that the security given was a new mobile home with a value of $10,850.00, when in fact it was a fire-damaged mobile home having a value of $2,620.00."
 
 299 N.C. at 242
 
 ,
 
 262 S.E.2d at 285
 
 . That indictment specifically alleged the defendant obtained from the bank "currency of the United States in the value of Five Thousand Seven Hundred and 54/100 Dollars ($5,704.54) ...."
 
 Id.
 
 at 234,
 
 262 S.E.2d at 281
 
 . Here, contrarily, the State attempted to charge defendant with obtaining from Weyco secured vehicle loans of $14,399.00 and $56,976.00, but the indictments merely alleged he obtained an unspecified amount of "credit" by being issued "loan[s]" of unspecified values.
 

 Second, the
 
 Jones
 
 Court held the indictments invalid for failing to specify with sufficient particularity the things obtained, despite those indictments specifically identifying the offense dates, the victims, and the stolen credit card used to obtain the automobile services and parts. Additionally, even if "loan" and "credit card" are terms generally used to describe how one secures credit, defendant was indicted for "obtaining credit" and, as stated above, all three indictments lacked the most basic identifying information with respect to the loans and credit card.
 

 *253
 
 Third, the State's reliance on
 
 Ricks
 
 is unpersuasive. Despite the
 
 Jones
 
 Court relying on established precedent that an indictment alleging money was obtained must specify its amount, the
 
 Ricks
 
 panel held that an indictment merely describing an unspecified "quantity of U.S. Currency" was sufficient. --- N.C. App. at ----,
 
 781 S.E.2d at 645
 
 . As mentioned above, "credit" is a description less specific than "money" and lesser still than "U.S. Currency." Further, as defendant argues, merely describing "a loan" without specifying whether it was a loan of real property, personal property, or currency, is also less specific than describing "U.S. Currency."
 

 *175
 
 Additionally, immediately before oral argument, the State submitted as additional authority this Court's decision in
 
 State v. Buchanan
 
 , --- N.C. App. ----,
 
 801 S.E.2d 366
 
 (2017), to support its position that, because obtaining "credit" is a thing of value sufficient to sustain an obtaining-property-by-false-pretenses conviction, the indictments returned against defendant were valid. The State's reliance on
 
 Buchanan
 
 is misplaced.
 

 In
 
 Buchanan
 
 , the defendant was convicted of obtaining property by false pretenses after allegedly misrepresenting to his bank that his girlfriend fraudulently signed and cashed,
 
 inter alia
 
 , a $600 check drawn on his account, which resulted in the bank placing $600 of provisional credit into his bank account.
 

 Id.
 

 at ----,
 
 801 S.E.2d at 366-68
 
 . Although no evidence showed the defendant "attempted to withdraw, spend, or otherwise access the $600,"
 

 id.
 

 at ----,
 
 801 S.E.2d at 368
 
 , we held the "provisional credit placed in Defendant's [bank] account was a 'thing of value' sufficient to sustain his conviction,"
 

 id.
 

 at ----,
 
 801 S.E.2d at 369
 
 . We reasoned that "[t]he provisional credit was the equivalent of money being placed in his account, to which he had access, at least temporarily. Access to money for a period of time, even if it eventually has to be paid back, is a 'thing of value.' "
 

 Id.
 

 at ----,
 
 801 S.E.2d at 369
 
 .
 

 Buchanan
 
 is inapplicable because that panel was presented with an issue of whether the trial evidence was sufficient to convict the defendant and not whether the indictment was sufficient to charge the defendant.
 

 Id.
 

 at ----,
 
 801 S.E.2d at 368
 
 . Indeed, that indictment specifically charged the defendant with "obtain[ing]
 
 $600
 
 from his bank ...."
 
 Id
 
 . at ----,
 
 801 S.E.2d at 368
 
 (emphasis added). Further, provisional credit placed into a bank account is a valuable more akin to a deposit of money, and unlike the revolving line of credit secured through a credit card or the secured vehicle loans at issue here.
 

 Because the State sought to prove that defendant obtained by false pretenses a $14,399 secured vehicle loan for the purchase of a Suzuki
 
 *254
 
 motorcycle and a $56,736 secured vehicle loan for the purchase of a Dodge truck, the indictments should have, at a minimum, identified these particular loans, described what was loaned, and specified what actual value defendant obtained from those loans. Because the State sought also to prove that defendant obtained the Credit Card by false pretenses, that indictment should have, at a minimum, identified the particular credit card and its account number, its value, and described what defendant obtained using that credit.
 

 In summary, defendant was indicted for obtaining an unspecified amount of credit secured through an unidentified credit card and two unidentified loans of unspecified values. The principle that when an indictment alleges "money" was obtained, it must at least be described in "so many dollars and cents" extends logically and soundly here. Indictments alleging that "credit" was obtained must at a minimum specify the value of that credit. And despite these indictments alleging that this credit was secured through the issuance of "loan[s]" and a "credit card," these vague descriptions fail to describe with reasonably certainty the things allegedly obtained. The indictments are thus insufficiently particular to sustain charges of obtaining property by false pretenses. In light of our disposition, we decline to address defendant's remaining arguments.
 
 See, e.g.
 
 ,
 
 Downing
 
 ,
 
 313 N.C. at 165
 
 ,
 
 326 S.E.2d at 257
 
 .
 

 IV. Conclusion
 

 An indictment charging a defendant with obtaining property by false pretenses under
 
 N.C. Gen. Stat. § 14-100
 
 needs to describe what was allegedly obtained with more particularity than "credit" of unknown value secured through being issued an unidentified "loan" or "credit card." Absent greater specificity, such an indictment violates one of its core purposes to "apprise the defendant of the charge against him with enough certainty to enable him to prepare his defense."
 
 Murrell
 
 at ----,
 
 804 S.E.2d at 508
 
 (citation and quotation marks omitted). Because these indictments failed to describe what was obtained with sufficient particularity, they failed to vest the trial court with jurisdiction to try defendant on charges of obtaining property by false pretenses. We thus vacate defendant's three obtaining property-by-false-pretenses
 
 *176
 
 convictions and arrest the resulting judgments.
 

 VACATED.
 

 Judges DIETZ and ARROWOOD concur.