IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-307

 No. COA20-608

 Filed 6 July 2021

 Wake County, Nos. 18 CRS 215090-92

 STATE OF NORTH CAROLINA

 v.

 KIMBERLY BRANTLEY-PHILLIPS

 Appeal by Defendant from Judgments entered 9 September 2019 by Judge

 Rebecca W. Holt in Wake County Superior Court. Heard in the Court of Appeals 12

 May 2021.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General Ryan F.
 Haigh, for the State.

 Benjamin J. Kull for defendant-appellant.

 HAMPSON, Judge.

 Factual and Procedural Background

¶1 Kimberly Brantley-Phillips (Defendant) appeals from Judgments entered 26

 September 2019 after a jury found her guilty of ten counts of Obtaining Property by

 False Pretense. The Record tends to reflect the following:

¶2 Between 20 November 2014 and 25 January 2018, Defendant made forty-eight

 online payments to the North Carolina Department of Revenue (NCDOR), which
 STATE V. BRANTLEY-PHILLIPS

 2021-NCCOA-307

 Opinion of the Court

 were “applied to Transaction Lists, or NCDOR ledgers, for tax years 2011 and 2014.”

 These payments—which were made on Defendant’s NCDOR taxpayer account, under

 Defendant’s name, and in association with Defendant’s Social Security Number—

 came from a total of ten banks. The routing numbers associated with each online

 payment all corresponded to valid bank routing numbers. Ultimately, each payment

 was rejected: one for insufficient funds, and the remaining forty-seven by reason of

 “Invalid Account[s][.]” These payments would have amounted to a total of

 $559,549.71.

¶3 NCDOR’s internal online filing and payment system registered each payment,

 along with the pertinent personal information. After each payment was registered,

 Defendant’s taxpayer account would be positively credited “virtually immediately[.]”

 Then, before it had time to realize these payments were invalid,1 NCDOR would

 “either sen[d] money to other tax years to pay liabilities owed[,]” or “sen[d] [money]

 to external agencies to pay liabilities owed to them[.]” On a few occasions following

 these payments, NCDOR also stopped garnishments of Defendant’s wages,

 previously put in place to recoup existing debts on Defendant’s taxpayer account.

 Moreover, because Defendant’s alleged payments resulted in overpayment on

 1 The amount of time needed for NCDOR to receive notice from alleged payment source

 bank that the account in question is either invalid or has insufficient funds is “three to seven
 . . . business days depending on holidays and weekends . . . .”
 STATE V. BRANTLEY-PHILLIPS

 2021-NCCOA-307

 Opinion of the Court

 Defendant’s tax account for the 2014 account period, Defendant received four refund

 checks, the first three of which she was able to cash before NCDOR realized

 Defendant’s payments were invalid and issued a stop payment order.

¶4 In July 2017, Karli Hahn (Agent Hahn), a special agent in the criminal

 investigation section of NCDOR, was assigned to investigate Defendant’s online

 payment activity. In February 2018, Agent Hahn spoke with Defendant directly.

 Agent Hahn testified, over the course of her interview with Defendant, Defendant

 admitted: she knew the payments in question and associated bank accounts were

 false; she had cashed the refund checks despite knowing she was not entitled to the

 money; and had made the invalid payments to “stop the wage garnishments from

 occurring[.]” “[E]ventually she realized that she was getting refund checks, so then

 she decided she wanted to continue the cycle.”

¶5 On 14 August 2018, three warrants were issued for Defendant’s arrest

 charging Defendant with a total of ten counts of Obtaining Property by False

 Pretense. The State subsequently gave notice it intended to use the remainder of the

 forty-eight payments as evidence of “an ongoing and substantially interconnected

 criminal enterprise.” The warrants alleged: Defendant had submitted online filings

 to NCDOR in 2014, 2015, and 2016, respectively; had made these payments from

 invalid bank accounts under false pretenses; and had obtained or attempted to obtain

 a total of $1,092.48, $4,456.23, and $20,248.16, respectively.
 STATE V. BRANTLEY-PHILLIPS

 2021-NCCOA-307

 Opinion of the Court

¶6 On 9 October 2018, a grand jury in Wake County indicted Defendant on ten

 counts of Obtaining Property by False Pretense, alleging she had obtained or

 attempted to obtain “United States Currency[.]” On 30 July 2019, Defendant was

 indicted on the same charges via superseding indictments, this time alleging

 Defendant had obtained or attempted to obtain “a credit on her North Carolina

 Department of Revenue account in the approximate amount[s]” of $2,256.16, $35,500,

 and $40,000, respectively.

¶7 The matter came on for trial before a jury in Wake County Superior Court on

 23 September 2019. At the close of the State’s evidence, Defendant moved to dismiss

 all charges for insufficient evidence. The trial court denied the Motion, finding “there

 [wa]s substantial evidence as to each element of each charge charged in this case[.]”

 Defendant renewed her Motion to Dismiss at the close of all evidence. The trial court

 again denied the Motion. The trial court subsequently instructed the jury for each of

 the ten counts:

 If you find from the evidence beyond a reasonable doubt . . . the
 Defendant made a representation and that this representation
 was false, that this representation was calculated and intended
 to deceive, that the alleged victim was in fact deceived by it, and
 that the Defendant thereby obtained property or a thing of value
 from the alleged victim, it would be your duty to return a verdict
 of guilty.

¶8 On 26 September 2019, the jury found Defendant guilty on all ten counts of

 Obtaining Property by False Pretense. The trial court entered Judgments in each of
 STATE V. BRANTLEY-PHILLIPS

 2021-NCCOA-307

 Opinion of the Court

 the three cases. The first Judgment (file number 18 CRS 215090) consolidated four

 of the convictions and sentenced Defendant in the presumptive range of six-to-

 seventeen months. The second Judgment (file number 18 CRS 215091) consolidated

 three of the convictions, sentencing Defendant to a consecutive, active term of six-to-

 seventeen months, suspended for a period of thirty-six months. The third Judgment

 (file number 18 CRS 215092) consolidated the remaining three convictions sentencing

 Defendant to a further consecutive term of six-to-seventeen months, also suspended.

 As a monetary condition of probation in 18 CRS 215091, Defendant was ordered to

 pay restitution in the amount of $14,506.56. A separate notation in the Judgment

 entered in 18 CRS 215092 reflects it applies the same conditions of probation as in

 18 CRS 215091. Defendant gave timely, oral Notice of Appeal in open court,

 consistent with N.C.R. App. P. 4.

 Issues

¶9 The dispositive issues on appeal are whether: (I) the trial court erred in

 denying Defendant’s Motion to Dismiss the charges of Obtaining Property by False

 Pretense for insufficient evidence; (II) the jury instructions varied fatally from the

 indictments by failing to specify the credits to Defendant’s NCDOR account as the

 “thing of value” obtained; and (III) the trial court committed error in ordering

 Defendant to pay restitution in the amount of $14,506.56.
 STATE V. BRANTLEY-PHILLIPS

 2021-NCCOA-307

 Opinion of the Court

 Analysis

 I. Motion to Dismiss

 A. Standard of Review

¶ 10 “Upon [a] defendant’s motion for dismissal, the question for the Court is

 whether there is substantial evidence (1) of each essential element of the offense

 charged, or of a lesser offense included therein, and (2) of defendant’s being the

 perpetrator of such offense. If so, the motion is properly denied.” State v. Fields, 265

 N.C. App. 69, 71, 827 S.E.2d 120, 122 (2019), review allowed, writ allowed, 830 S.E.2d

 816 (N.C. 2019), and aff’d as modified, 374 N.C. 629, 843 S.E.2d 186 (2020) (citation

 and quotation marks omitted). “Substantial evidence is [the] amount . . . necessary

 to persuade a rational juror to accept a conclusion.” State v. Golder, 374 N.C. 238,

 249-50, 839 S.E.2d 782, 790 (2020) (alterations in original; quotations marks omitted)

 (quoting State v. Mann, 355 N.C. 294, 301, 560 S.E.2d 776, 781 (2002)). “In evaluating

 the sufficiency of the evidence to support a criminal conviction, the evidence must be

 considered ‘in the light most favorable to the State; the State is entitled to every

 reasonable intendment and every reasonable inference to be drawn therefrom.’ ” Id.

 at 249-50, 839 S.E.2d at 790 (quoting State v. Powell, 299 N.C. 95, 99, 261 S.E.2d 114,

 117 (1980)). “Whether the State presented substantial evidence of each essential

 element of the offense is a question of law; therefore, we review the denial of a motion

 to dismiss de novo.” Id. at 250, 839 S.E.2d at 790 (quotation marks omitted) (quoting
 STATE V. BRANTLEY-PHILLIPS

 2021-NCCOA-307

 Opinion of the Court

 State v. Chekanow, 370 N.C. 488, 492, 809 S.E.2d 546, 550 (2018)).

 B. Obtaining Property by False Pretense

¶ 11 Our General Statutes set out the felony of Obtaining Property by False

 Pretense as follows:

 If any person shall knowingly and designedly by means of any
 kind of false pretense whatsoever, whether the false pretense is
 of a past or subsisting fact or of a future fulfillment or event,
 obtain or attempt to obtain from any person within this State any
 money, goods, property, services, chose in action, or other thing of
 value with intent to cheat or defraud any person of such money,
 goods, property, services, chose in action or other thing of value,
 such person shall be guilty of a felony[.]

 N.C. Gen. Stat. § 14-100(a) (2019).

 Our Supreme Court has defined the elements of the crime of
 obtaining property by false pretenses in N.C. Gen. Stat. § 14-100
 as follows: “(1) a false representation of a subsisting fact or a
 future fulfillment or event, (2) which is calculated and intended
 to deceive, (3) which does in fact deceive, and (4) by which one
 person obtains or attempts to obtain value from another.”

 State v. Bradsher, ___ N.C. App. ___, ___, 852 S.E.2d 716, 729 (2020) (emphasis

 added) (quoting State v. Cronin, 299 N.C. 229, 242, 262 S.E.2d 277, 286 (1980)).

¶ 12 Here, Defendant argues the trial court erred in denying her Motion to Dismiss

 on the basis the State failed to present substantial evidence that Defendant’s positive

 credits to her NCDOR taxpayer account constituted “property or a thing of value,” or

 that NCDOR was deceived by Defendant’s invalid payments.

 1. Evidence Defendant Obtained Property or a Thing of Value
 STATE V. BRANTLEY-PHILLIPS

 2021-NCCOA-307

 Opinion of the Court

¶ 13 Defendant first argues the State presented insufficient evidence to establish

 Defendant obtained “property or a thing of value.” Specifically, Defendant argues the

 credit to Defendant’s taxpayer account resulting from her invalid payments does not

 constitute “property or a thing of value.” In fact, Defendant contends “there [i]s no

 evidence that [Defendant] received any actual, real-world value from any of the ten

 indicted transactions.”

¶ 14 As to all which the term “thing of value” may encompass, for the purpose of

 proving the offense of Obtaining Property by False Pretense, “all that our law

 requires is that the defendant obtain[] or attempt[] to obtain anything of value.” State

 v. Golder, 257 N.C. App. 803, 813, 809 S.E.2d 502, 509 (2018), aff’d as modified, 374

 N.C. 238, 839 S.E.2d 782 (2020) (alterations in original) (citation and quotation marks

 omitted); see also Golder, 374 N.C. at 252-53, 839 S.E.2d at 792 (“The fact that the

 statute imparts criminal liability when a defendant even attempts to obtain any ‘other

 thing of value’ guides this Court in deciding to apply a broader definition of ‘thing of

 value’ than suggested by defendant.”) “ ‘Anything’ is the most broad term one can

 use to define the class of valuable items that could satisfy this element, and that

 factual determination [i]s for the jury.” Golder, 257 N.C. App. at 813, 809 S.E.2d at

 509.

¶ 15 In Golder, “[t]he indictment arose from allegations that [the] defendant and

 Kevin Ballentine, a public employee with the Wake County Clerk’s Office, devised a
 STATE V. BRANTLEY-PHILLIPS

 2021-NCCOA-307

 Opinion of the Court

 scheme in which [the] defendant would pay Ballentine to alter or falsify court

 documents to secure remission of bail bond forfeitures.” Golder, 374 N.C. at 240, 839

 S.E.2d at 784. The defendant argued the State had not shown he had obtained “a

 thing of value” “because the fraudulent representations merely resulted in the

 ‘elimination of a potential future liability.’ ” Id. at 252, 839 S.E.2d at 792. Our

 Supreme Court reasoned:

 Assuming arguendo that the elimination of a potential future
 liability does not constitute “property” under N.C.G.S. § 14-100,
 that result is not dispositive . . . . At a minimum, this was an
 attempt to reduce the amount that defendant’s bail bond company
 was required to pay as surety for forfeited bonds and, therefore,
 constitutes a “thing of value” under N.C.G.S. § 14-100.

 Id. at 252-53, 839 S.E.2d at 792. Accordingly, the Supreme Court concluded the State

 had provided sufficient evidence to support the defendant’s conviction of Obtaining

 Property by False Pretense. Id. at 253, 839 S.E.2d at 792.

¶ 16 Though the context of our case differs somewhat from Golder, the respective

 outcomes are not significantly distinguishable. Here, the State provided testimony

 from Agent Hahn and Defendant’s NCDOR transactions list for the 2011 and 2014

 tax years. The evidence, viewed in the light most favorable to the State, provides a

 clear picture: Defendant’s fraudulent payments positively credited her taxpayer

 account “virtually immediately[.]” These credits, in turn, led NCDOR to provide

 credit toward Defendant’s liabilities and to credit Defendant’s liabilities to other
 STATE V. BRANTLEY-PHILLIPS

 2021-NCCOA-307

 Opinion of the Court

 agencies, to put a hold on its garnishments of Defendant’s wages, and to submit four

 refund checks to Defendant, three of which she successfully cashed. Thus, the benefit

 Defendant incurred from her purported “payments” was the elimination or

 diminution of liabilities owed to NCDOR and other agencies, in addition to the

 tangible benefit of cash by way of the refund checks. Moreover, Defendant herself

 admitted she committed these offenses to “stop the wage garnishments from

 occurring,” and deliberately “continue[d] the cycle” to redeem additional refund

 checks. “At a minimum,” then, Defendant’s efforts were “an attempt to reduce the

 amount that [D]efendant[] . . . was required to pay” NCDOR. See id. at 253, 839

 S.E.2d at 792. Thus, the State brought forth sufficient evidence to “persuade a

 rational juror to accept [the] conclusion” Defendant, by obtaining credits to her

 taxpayer account by way of her invalid payments, had indeed obtained “property or

 a thing of value.” See id. at 249, 839 S.E.2d at 790 (citation omitted).

 2. Evidence NCDOR Was Deceived by Defendant’s Invalid
 Payments

¶ 17 Defendant next argues the State failed to present substantial evidence

 showing NCDOR was, in fact, deceived by Defendant’s invalid payments to her

 taxpayer account.

¶ 18 Here, the evidence at trial showed, following Defendant’s invalid payments,

 because “there were a bunch of online payments made on the Defendant’s account
 STATE V. BRANTLEY-PHILLIPS

 2021-NCCOA-307

 Opinion of the Court

 that [NCDOR] thought [it] received the funding for[,]” NCDOR “either sent money to

 other tax years to pay liabilities owed or . . . sent it to external agencies to pay

 liabilities owed to them, as well, when in actuality [NCDOR] never received the

 funding from [Defendant] or these bank accounts because they were fake.” NCDOR

 stopped garnishments on Defendant’s wages on multiple instances following

 Defendant’s false payments. Moreover, some of Defendant’s invalid payments led

 NCDOR to believe, erroneously, Defendant had overpaid, thus resulting in the

 issuing of the four refund checks to her.

¶ 19 Thus, again, the State brought forth sufficient evidence to “persuade a rational

 juror to accept [the] conclusion” NCDOR was deceived by Defendant’s false payments.

 See id. at 249, 839 S.E.2d at 790 (citation omitted). The trial court did not err in

 denying Defendant’s Motion to Dismiss for lack of sufficient evidence.

 II. Jury Instructions

¶ 20 Defendant further argues the trial court’s instructions to the jury—using the

 term “thing of value” without identifying the thing of value as the credits to

 Defendant’s taxpayer account, as specifically described in the superseding

 indictments—varied fatally from the indictments and were thus erroneous.

 A. Standard of Review

¶ 21 As a preliminary matter, the parties dispute whether we should apply plain
 STATE V. BRANTLEY-PHILLIPS

 2021-NCCOA-307

 Opinion of the Court

 error or de novo review. Defendant failed to preserve a specific objection on the issue

 of jury instructions, a fact which she concedes. Defendant contends, however, the

 Supreme Court in Golder “assumed without deciding” that “issues concerning fatal

 variance are preserved by a general motion to dismiss.” Thus, because Defendant did

 make a Motion to Dismiss, which was renewed at the close of all evidence, Defendant

 claims the issue is preserved and subject to de novo review. Conceding, however, the

 Supreme Court “did not firmly settle that question,” in the alternative, Defendant

 seeks plain error review. The State, for its part, argues Defendant’s claim regarding

 jury instructions “is not related to the sufficiency of evidence presented at trial,” and

 thus, as unpreserved, her claim must be reviewed for plain error.

¶ 22 Although Golder did not address this specific question, our Court has noted, in

 light of Golder: “any fatal variance argument is, essentially, an argument regarding

 the sufficiency of the State’s evidence.” State v. Gettleman, ___ N.C. App. ___, ___,

 853 S.E.2d 447, 454 (2020) (citation omitted). We further reasoned: “[o]ur Supreme

 Court made clear in Golder that ‘moving to dismiss at the proper time . . . preserves

 all issues related to the sufficiency of the evidence for appellate review.’ ” Id. (quoting

 Golder, 374 N.C. at 249, 839 S.E.2d at 790). Specifically, in Gettleman we determined

 the defendant failed to preserve an argument that the jury instructions and

 indictment in that case created a fatal variance precisely because the Defendant

 failed to move to dismiss the charge in question. Id. Here, unlike in Gettleman,
 STATE V. BRANTLEY-PHILLIPS

 2021-NCCOA-307

 Opinion of the Court

 Defendant did timely move to dismiss all charges, and thus, under the rationale of

 Gettleman, it would appear Defendant did preserve this argument. 2 See id. Without

 so deciding, and for purposes of review of this case, we employ de novo review. See

 id.

 B. Whether the Jury Instructions Varied Fatally from the Indictments

¶ 23 Defendant argues: “[t]o the extent th[e] [jury] instructions allowed the jury to

 conclude that the $1,889.80 in offsets, as described during Agent Hahn’s testimony,

 constituted the requisite ‘thing of value’ for any of the ten charges, the instructions

 varied fatally from the indictments.” In other words, Defendant argues, to the extent

 the jury may have been misled by the instructions to confuse “offsets” with “credits”

 as the “thing of value” allegedly obtained by Defendant, the jury instructions varied

 fatally from the superseding indictments and were thus erroneous.

¶ 24 “It is a rule of universal observance in the administration of criminal law that

 a defendant must be convicted, if convicted at all, of the particular offense charged in

 the bill of indictment.” State v. Locklear, 259 N.C. App. 374, 380, 816 S.E.2d 197, 202

 2 The State’s point is well taken. It is not clear our Supreme Court necessarily intended a
 Motion to Dismiss based on insufficient evidence to preserve an argument that the jury
 instructions varied from the indictment. See generally State v. Gregory, 342 N.C. 580, 467
 S.E.2d 28 (1996) (reviewing for plain error); State v. McNair, 253 N.C. App. 178, 799 S.E.2d
 631 (2017) (reviewing for plain error); State v. Locklear, 259 N.C. App. 374, 816 S.E.2d 197
 (2018) (reviewing for plain error); State v. Lu, 268 N.C. App. 431, 836 S.E.2d 664 (2019)
 (reviewing for plain error).
 STATE V. BRANTLEY-PHILLIPS

 2021-NCCOA-307

 Opinion of the Court

 (2018) (quotation marks omitted) (quoting State v. Barnett, 368 N.C. 710, 713, 782

 S.E.2d 885, 888 (2016)). “Thus, ‘[i]f the indictment’s allegations do not conform to the

 “equivalent material aspects of the jury charge,” this discrepancy is considered a fatal

 variance.’ ” Id. (alteration in original) (quoting State v. Taylor, 304 N.C. 249, 274,

 283 S.E.2d 761, 777 (1981), cert. denied, 463 U.S. 1213, 77 L. Ed. 2d 1398, rehr’g

 denied, 463 U.S. 1249, 77 L. Ed. 2d 1456 (1983)). “It is clearly the rule in this

 jurisdiction that the trial court should not give instructions which present to the jury

 possible theories of conviction which are . . . not charged in the bill of indictment.” Id.

 at 383, 816 S.E.2d at 204 (alteration in original; quotation marks omitted) (quoting

 Taylor, 304 N.C. at 274, 283 S.E.2d at 777). “Nevertheless, this Court has stated that

 ‘[a] jury instruction that is not specific to the misrepresentation in the indictment is

 acceptable so long as the court finds “no fatal variance between the indictment, the

 proof presented at trial, and the instructions to the jury.” ’ ” Id. (alteration in original)

 (quoting State v. Ledwell, 171 N.C. App. 314, 320, 614 S.E.2d 562, 566 (2005)). For

 example, “[i]n [State v.] Clemmons, this Court held the trial court did not err in failing

 to mention the exact misrepresentation alleged in the indictment in the jury

 instruction because the State’s evidence corresponded to the allegation in the

 indictment.” Id. (citing State v. Clemmons, 111 N.C. App. 569, 578, 433 S.E.2d 748,

 753 (1993)).

¶ 25 State v. Locklear provides another pertinent example; there, at issue was
 STATE V. BRANTLEY-PHILLIPS

 2021-NCCOA-307

 Opinion of the Court

whether there was a fatal variance between the indictment for Obtaining Property

by False Pretense and the jury instructions. Id. at 380, 816 S.E.2d at 202. There,

the indictment specified the false pretense of “filing a fire loss claim under the

defendant’s home owner insurance policy, when in fact the defendant had

intentionally burned her own residence,” whereas the jury instructions did not make

such specifications, but instead provided “that the jury must find ‘that the [d]efendant

made a representation to another[,]’ ‘that the representation was false[,]’ and ‘the

representation was calculated and intended to deceive.’ ” Id. at 380-81, 816 S.E.2d at

203 (second and third brackets in original). In fact,

 [d]uring the charge conference, the parties agreed that the court
 would instruct the jury on obtaining property of value of $100,000
 or greater by false pretense and the lesser offense of obtaining
 property by false pretense where value is not at issue. The trial
 court was informed that both offenses were included in the same
 pattern jury instruction. The trial court then instructed the jury
 pursuant to pattern instruction N.C.P.I.—Crim. 219.10A without
 specifying the false pretense alleged in the indictment.

Id. “The jury ultimately convicted [the] defendant of the lesser obtaining property by

false pretense offense.” Id. at 381, 816 S.E.2d at 203. Our Court analyzed:

 evidence was introduced at defendant’s trial of various
 misrepresentations in defendant’s insurance claim besides her
 denial that she had anything to do with setting the fire. Precisely,
 in addition to evidence of the misrepresentation alleged in the
 indictment—“filing a fire loss claim under the defendant’s home
 owner insurance policy, when in fact the defendant had
 intentionally burned her own residence”—evidence was
 introduced that defendant signed her ex-husband’s name on a
 STATE V. BRANTLEY-PHILLIPS

 2021-NCCOA-307

 Opinion of the Court

 deed, overstated the personal items allegedly destroyed in the
 fire, and sought money for rent that was not used for rent. Both
 defendant and the State have acknowledged evidence of these
 misrepresentations.

 Id. at 383-84, 816 S.E.2d at 205. Our Court further reasoned:

 [w]here there is evidence of various misrepresentations which the
 jury could have considered in reaching a verdict for obtaining
 property by false pretense, we hold the trial court erred by not
 mentioning the misrepresentation specified in the indictment in
 the jury instructions for the offense.

 Id. at 384, 816 S.E.2d at 205. Then, our Court concluded:

 Upon review, we agree with defendant that absent the trial
 court’s error, it is likely the jury would have reached a different
 verdict for the obtaining property by false pretense charge. If the
 trial court’s instructions had limited the jury’s consideration to
 “filing a fire loss claim under the defendant’s home owner
 insurance policy, when in fact the defendant had intentionally
 burned her own residence,” it is unlikely the jury would have
 found defendant guilty because the jury found defendant not
 guilty of occupant or owner setting fire to a dwelling house. The
 instructions given by the trial court allowed the jury to consider
 any misrepresentation by defendant as a basis for a guilty verdict
 for obtaining property by false pretense . . . . Because the trial
 court’s erroneous instructions allowed the jury to convict
 defendant on a theory not alleged in the indictment and it is
 unlikely the jury would have convicted defendant on the theory
 alleged in the indictment, we hold the error had a probable impact
 on the jury’s finding defendant guilty of obtaining property by
 false pretense. The trial court plainly erred.

 Id. at 384-85, 816 S.E.2d at 205.

¶ 26 Here, the alleged variance between the superseding indictments and the jury

 instructions arises from what constituted the “thing of value” requisite in charging
 STATE V. BRANTLEY-PHILLIPS

 2021-NCCOA-307

 Opinion of the Court

 Defendant for Obtaining Property by False Pretense. As Defendant concedes, the

 superseding indictments were very clear in alleging the “thing of value” obtained by

 Defendant in each of the ten charges was in the form of “credit[,]” enumerating each

 of the ten transactions at issue along with its respective date, time, and monetary

 amount credited to Defendant’s NCDOR account.3 Conversely, the trial court’s

 instructions did not make reference to any “credits,” but instead allowed the jury to

 convict if it found beyond a reasonable doubt Defendant had “obtained property or a

 thing of value from the alleged victim” for each of the ten counts. To the extent the

 jury instructions do not match the exact language used within the superseding

 indictments, Defendant’s argument is not entirely without merit. See id. at 380, 816

 S.E.2d at 202. Defendant, however, contends these instructions allowed the jury to

 understand the “offsets,” as described by Agent Hahn, to constitute the “thing of

 value” obtained by Defendant, when “none of the offsets matches the amount of any

 of the ‘credits’ described in the superseding indictments.” This portion of Defendant’s

 argument is inapposite.

¶ 27 In the instances in which Agent Hahn makes references to “offsets”—

 3 Despite this concession, in support of her argument, Defendant cites State v. Jones,

 367 N.C. 299, 758 S.E.2d 345 (2014) (in which our Supreme Court concluded that an
 indictment for Obtaining Property by False Pretense alleging the defendant obtained
 “services” was insufficient) and State v. Everette, 256 N.C. App. 244, 807 S.E.2d 168 (2017)
 (in which the indictments charging the defendant with obtaining credit of an unspecified
 amount were insufficient). These cases are inapposite to the issue presented here.
 STATE V. BRANTLEY-PHILLIPS

 2021-NCCOA-307

 Opinion of the Court

particularly those passages upon which Defendant’s argument relies—she appears to

use the term informatively to explain dollar amounts in the State’s exhibits, as

exemplified in the following transcript excerpt:

 Q. Okay. And I’m going to show you the third page of
 Exhibit 2. Could you please walk the jury through the pertinent
 entries on that.

 A. Yep. Again you can see on line one where a payment
 was made for just over $2,200. And then you can see shortly after
 we received -- we backed out that payment because again, the
 funds were never received. And then we sent -- these are actually
 offsets that were received from other payments [Defendant] made
 and other tax years. So we had a negative balance there and so
 we took other payments that [Defendant] made another tax year
 and applied it to this in order to, you know, alleviate [Defendant’s]
 tax due to [NCDOR].

 Q. Okay. Can you just remind the jury what an offset is.

 A. Yep. Again, the offset, it can occur in two separate ways.
 Like I was just explaining, let’s say in 2011 [Defendant] owes an
 amount of money and she made a payment to apply to another
 tax year. If that payment that [Defendant] submitted for the
 other tax year is an excess amount of what she owed for that tax
 year, [Defendant] owes another tax year money. So in this
 instance, 2011, we’ll apply that over -- overage of money to 2011
 to alleviate the tax liability. And then again, it can also be to an
 external agency, IRS, government, university.

 Q. So in this circumstance [Defendant] allegedly made a
 payment for another tax year and had a positive balance.

 A. Right. Yes.

Moreover, Agent Hahn’s testimony makes it clear that Defendant did not obtain

offsets as a “thing of value”:
 STATE V. BRANTLEY-PHILLIPS

 2021-NCCOA-307

 Opinion of the Court

 Q. Okay. And are you asserting that the Defendant
 received anything more than a credit on her tax account? Well,
 initially the refund checks and the offsets that she gets credit for,
 that all stems from a positive credit on her account in this
 window, right?

 A. Yes, sir.

¶ 28 The State’s evidence—Agent Hahn’s testimony—is indicative that the alleged

 “thing of value” of the felony charged is the temporary credit to Defendant’s NCDOR

 account, not the offsets nor the refund checks resulting therefrom.

¶ 29 Furthermore, the State’s case was consistent with the superseding

 indictments, in that it alleged the “thing of value” obtained by Defendant was in fact

 “credit,” as illustrated in the State’s closing argument:

 We know that the Department of Revenue got those payments
 and [NCDOR] perceived them to be legitimate and gave the
 Defendant’s account credit for those payments. And the
 Defendant thereby obtained property or a thing of value.

 Now, I want to talk about that, because the evidence in this
 case is a little bit confusing . . . . So the thing of value in this case
 is that credit in her account. So on a particular day if she puts in
 a payment for $2,256, it’s the credit of $2,256 that we’re talking
 about . . . .

 ....

 But the reason that I’m clarifying this is because you will
 be asked to consider . . . 10 specific actions at specific times. And
 I don’t want to confuse you with the difference between the credit
 for the payments on one side, which is what the State is alleging
 here is the thing of value, and the paying off the debts and the
 checks that were cashed later, because those are effects or a
 natural outcome to the thing of value. So what we are charging
 STATE V. BRANTLEY-PHILLIPS

 2021-NCCOA-307

 Opinion of the Court

 on that particular date is related to the actual payment and the
 credit associated with that. So hopefully that’s clear.

¶ 30 Moreover, although the jury instructions did not specify, by way of using the

 word “credit,” that the “thing of value” allegedly obtained in each of the ten counts

 were credits to Defendant’s NCDOR account, the trial court was otherwise very

 specific in enumerating each count individually, distinguishing each of the ten

 transactions by date and time, and instructing the jury for each of those counts that,

 if it found from the evidence beyond a reasonable doubt that Defendant “made a

 representation and that this representation was false, that this representation was

 calculated and intended to deceive, that the alleged victim was in fact deceived by it,

 and that the Defendant thereby obtained property or a thing of value from the alleged

 victim,” it should convict.

¶ 31 In fact, unlike in Locklear, where “[t]he instructions given by the trial court

 allowed the jury to consider any misrepresentation by [the] defendant as a basis for

 a guilty verdict for obtaining property by false pretense[,]” here, the trial court’s

 instructions did not allow the jury such broad bandwidth, but were instead careful

 instructions as to each of the ten transactions at issue. Locklear, 259 N.C. App. at

 384, 816 S.E.2d at 205. Further, the trial court provided clear limiting instructions

 regarding the extent to which evidence of the thirty-eight remaining payments, the

 three bad checks, and Defendant’s cashing or attempt to cash the checks may have
 STATE V. BRANTLEY-PHILLIPS

 2021-NCCOA-307

 Opinion of the Court

 been considered.4 Lastly, in her argument, Defendant relies upon case law in which

 it was the indictment, rather than the jury instructions, that was insufficiently

 specific and thus variant from the jury instructions; here, as analyzed, that is simply

 not the case.

¶ 32 Thus, because “the State’s evidence corresponded to the allegation[s] in the

 indictment[s]” and there is consistency between “the indictment[s], the proof

 presented at trial, and the instructions to the jury[,]” there was no fatal variance

 between the superseding indictments and the jury instructions. See id. at 383, 816

 S.E.2d at 204 (citations and quotation marks omitted). Therefore, the trial court’s

 jury instructions were not erroneous. See id.

 4 In these instructions, the trial court advised the remaining thirty-eight invalid
 payments were received solely for the purpose of showing, if the jury found that the
 transactions did indeed occur, the identity of the person who made the payments, and to show
 “Defendant had a motive for the commission of the crime charged in this case, that the
 Defendant had the knowledge, intent, or preparation to commit the crime charged, that there
 existed in the mind of the Defendant a plan, scheme, system or design involving the crime
 charged in this case, or the absence of mistake or accident.” Evidence of the three bad checks
 was received for the limited purpose “of showing that the Defendant had the intent or
 knowledge to commit the crime charged in this case, that there existed in the mind of the
 Defendant a plan, scheme, system or design involving the crime charged in this case, that
 the Defendant had the opportunity to commit the crime, preparation, or the absence of
 mistake.” Evidence of Defendant’s cashing or attempting to cash the refund checks was
 received for the limited purpose “of showing that the Defendant had a motive for the
 commission of the crime charged in this case, that the Defendant had the intent or knowledge
 to commit the crime charged in this case, that there existed in the mind of the Defendant a
 plan, scheme, system or design involving the crime charged in this case, that the Defendant
 had the opportunity to commit the crime, preparation, or the absence of mistake.”
 STATE V. BRANTLEY-PHILLIPS

 2021-NCCOA-307

 Opinion of the Court

 III. Restitution

¶ 33 In her final argument, Defendant argues the trial court erred in ordering

 Defendant to pay restitution of $14,506.56 for the State’s losses as a condition of

 probation in 18 CRS 215091 and 18 CRS 215092 because there was no evidence those

 losses resulted from the offenses for which Defendant was convicted.

¶ 34 “On appeal, we review de novo whether the restitution order was supported by

 evidence adduced at trial or at sentencing.” State v. Wright, 212 N.C. App. 640, 645,

 711 S.E.2d 797, 801 (2011) (citation and quotation marks omitted; emphasis omitted).

 With respect to this claim, the State concedes the trial court erred in ordering

 Defendant to pay $14,506.56 in restitution. We agree, and consequently we vacate

 the Judgments in 18 CRS 215091 and 215092 and remand solely for resentencing on

 this issue. See, e.g., State v. Santillan, 259 N.C. App. 394, 396, 815 S.E.2d 690, 692

 (2018) (vacating the defendant’s two sentences and remanding for a new sentence

 hearing upon the State’s concession “the trial court failed to make sufficient findings

 to support the two sentences”).

 Conclusion

¶ 35 Accordingly, for the foregoing reasons, we conclude there was no error at the

 trial of Defendant. However, we vacate the Judgments in 18 CRS 215091 and 18 CRS

 215092 and remand those matters for resentencing on the issue of restitution, if any,

 to be paid by Defendant as a monetary condition of probation.
 STATE V. BRANTLEY-PHILLIPS

 2021-NCCOA-307

 Opinion of the Court

NO ERROR IN PART; VACATED IN PART AND REMANDED.

Judges TYSON and WOOD concur.